E. T. WEIR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 85324. Promulgated February 10, 1939.

*Earl F. Reed, Esq.*, for the petitioner.
*Arthur W. Carnduff, Esq.*, and *Chester C. Guy, Esq.*, for the respondent.

OPINION.

HILL: We are to determine in this case, first, whether petitioner is entitled, under section 23 (e), Revenue Act of 1932,[1] to deduct from his gross income for 1932 the sum of $21,296.25 representing a capital loss sustained by him in that year from the sale of 250 shares of preferred stock of the Bellefield Co. In denying such deduction, respondent stated in the deficiency letter:

7. In your return you claimed a loss of $21,296.25 on a transaction involving the Bellefield Company stock. It is held that the claimed deduction is based on a transaction which the Bureau can not recognize as giving rise to a loss deductible for income tax purposes.

Petitioner purchased the stock in 1925 and 1926 at a cost of $25,000, and sold it in 1932 for the net sum of $3,703.75. Petitioner erroneously assumed that respondent denied the deduction on the ground that the transaction was not bona fide, and offered evidence to establish the circumstances surrounding the sale, which shows that it was made in good faith, and that he had no understanding or agreement with the purchaser, or anyone else, to reacquire the stock. But respondent raises no question concerning the bona fides of the transaction, nor that petitioner in fact sustained a loss in the amount claimed. Respondent contends only that the loss was in the nature of personal or living expense, not allowable as a deduction under the provisions of the statute above quoted. For reasons presently appearing, it is unnecessary to determine the correctness of respondent's contention that the loss was in the nature of personal or living expense.

The allowance of deductions from gross income for tax purposes is a matter within the sound discretion of Congress, and a taxpayer claiming a deduction must be able to point to an applicable statute and show that he comes clearly within its terms. *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, 440; *Van Vleck* v. *Commissioner*, 80 Fed. (2d) 217; *Davis* v. *United States*, 87 Fed. (2d) 23.

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

\*  \*  \*  \*  \*  \*  \*

(e) LOSSES BY INDIVIDUALS.—\* \* \* in the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
(1) if incurred in trade or business; or
(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; \* \* \*

The statute applicable in the instant proceeding is quoted in footnote 1, *supra*, and in order to show that he comes within its terms, petitioner plainly has the burden of proving not only that the deduction represents a real loss resulting from a bona fide transaction, as he has done, but also that the loss was incurred either (1) in trade or business, or (2) in a transaction entered into for profit, though not connected with the trade or business. There is no contention that the loss in controversy was incurred in petitioner's trade or business, and there is nothing in the record to suggest that such was the case.

In his brief petitioner argues that it is a legitimate inference from the facts in the record, although admitting there is no specific proof, that the Schenley Apartments were operated for the profit of the Bellefield Co., and that the stock which petitioner purchased was an ordinary investment which was expected to result in dividends to the owner, whether he was a tenant or not. We do not think petitioner's burden of proof may be viewed so lightly. We may not indulge the assumption, predicated upon mere inference or conjecture, that the transaction giving rise to the claimed loss deduction was entered into for profit. Petitioner's own testimony does not tend to support such a conclusion. He testified as follows:

Q. Why did you sell it (the Bellefield stock)?

A. To go back to the earlier years, when we moved into the Schenley Apartments, I wanted to have some ownership, so that I could have some influence in helping maintain certain standards— * * * The Bellefield Company owned the apartments, yes sir. We expected to live there permanently, and I bought 250 shares of stock, so that I would be a stockholder in the apartment, and I held the stock until 1932.

Petitioner stated that prior to the expiration of his lease he entered into negotiations for a substantial reduction of the rental, but at that time was unable to secure a satisfactory adjustment. He then testified:

* * * at the same time I was building a home outside of the city, about 40 miles, so we decided we would not renew the lease, and would move out of the apartment. That being the case, I had no interest in owning any stock in the apartment, so I told Mr. Hesse to sell the stock.

Subsequently, the rental having been reduced, petitioner decided to renew his lease and remain as a tenant. Accordingly, he repurchased the same stock which he had previously sold. He testified in that connection:

* * * we decided to make a lease with them on the basis of $10,000 a year; and I told Mr. Hesse that, if we were to stay there as tenants, I would want to own the stock for the same purpose for which I bought it, and I told Mr. Hesse to buy the stock back.

Petitioner was a man of substantial means; his net income as determined by respondent for the taxable year 1932 was $292,154.68.

Obviously, he could well afford to gratify his desire to exercise some control over the management of the company which owned the apartments in which he resided, through ownership of its stock, without regard to whether or not such stock constituted a profitable investment. In our opinion petitioner's testimony does not establish that his purchase of the stock in the Bellefield Co. was a transaction entered into for profit. He has wholly failed to establish that the deduction claimed comes within the purview of the applicable statute.

Respondent's determination of the first issue is approved.

The second issue is whether or not respondent erred in including in petitioner's gross income the amounts paid during the taxable years to petitioner's former wife by the trustee pursuant to the provisions of the trust instrument referred to in our findings of fact above. On May 29, 1924, petitioner executed the trust agreement, which was also signed by the trustee and petitioner's then wife, Mary K. Weir. Two days later, on May 31, the wife filed a libel for divorce and on December 23 of the same year the court granted her an absolute divorce without any provision for property settlement or alimony. The parties resided in Pennsylvania.

The first paragraph of the trust instrument recited that petitioner (grantor) transferred to the trustee the property therein described, in consideration of the release by his wife (the beneficiary) of all right of dower and any other interest which she had in his estate or property growing out of or in anywise connected with the marriage relation, as set out in the third paragraph of the instrument. In the fourth paragraph, petitioner released his right of curtesy in the estate or property of his wife. Thus, the trust instrument clearly constituted a settlement of the property rights of petitioner and his wife, and obviously was executed in contemplation of the divorce action which was instituted by the wife two days thereafter. The income of the trust property was payable to petitioner's wife during her lifetime, and petitioner guaranteed that the amount of such income, in addition to the use of the residential property or the income therefrom if rented or sold, would not be less than $18,000 per annum. If the income in any year should be insufficient to pay to his wife such sum, petitioner agreed to make up the deficiency. All trust expenses, including income and other taxes levied on the $18,000, were to be paid by petitioner. Upon the death of the wife, the trust was to be terminated and the property distributed among the three children of herself and petitioner.

Respondent contends that the income of the trust which was paid to petitioner's former wife during the years 1932 and 1933 is properly taxable to him under the doctrine of *Douglas* v. *Willcuts*, 296 U. S. 1, wherein it was held that the income of a trust used to dis-

charge a legal obligation of the grantor is taxable to the grantor. Numerous subsequent decisions both of the Board and the courts have followed the cited case, and other cases, distinguishable on the facts, have been held not to come within the stated rule. Application of the rule clearly depends upon whether the trust income was used to discharge a legal obligation of the grantor, whatever may be the precise nature of such obligation. In the *Douglas* case, *supra*, the trust income was held taxable to the grantor, because under the trust agreement, made pending divorce, such income was payable to the wife in lieu of alimony and property rights, and discharged the grantor's general legal obligations to support, made specific by decree. Some of the subsequent decisions, in so far as pertinent, will be discussed below.

While petitioner concedes that the doctrine of *Douglas* v. *Willcuts*, *supra*, and similar decisions, is that the grantor of the trust is taxable upon the trust income where it is currently applied to the satisfaction of a continuing obligation on the part of the grantor, he contends that in the instant case there was no continuing obligation on the part of the grantor. He argues that the trust agreement embraced a fully executed transaction in that each party made an immediate release of a contingent dower or curtesy interest in the other's property, and petitioner made an irrevocable and immediate grant of the trust estate to Mrs. Weir and their three children. Petitioner further points out that when the wife was granted an absolute divorce in 1924, under Pennsylvania law petitioner was relieved of his obligation to provide support and maintenance, and thereafter he was under no legal duties whatsoever to his former wife.

We can not agree with petitioner's argument. Under the facts presented, his position, we think, is untenable. There was a continuing legal obligation on the part of the petitioner, created by the trust instrument, which was discharged *pro tanto* by payments in the taxable years of the trust income to his former wife. Petitioner in effect acquired the interest of his wife in his estate or property in consideration of his agreement to pay her $18,000 per year during her lifetime, in addition to the use of or income from the residential property. The trust was in the nature of collateral security to insure payment of the agreed compensation. Whether or not the income of the trust was sufficient, petitioner was obligated to pay to his wife the stipulated amount.

If the trust had not been created and petitioner had used the income from the property to pay to his former wife the annual amount agreed upon as consideration for the release of her dower interest in his estate, there can be no doubt that such income would be taxable to him. The creation of the trust as a means of securing payment does

not render the income any the less attributable to petitioner. Under the trust agreement the income was to be used to satisfy his legal obligation arising from the contract. Also, the fact that the agreement was irrevocable and upon the death of petitioner's former wife the trust property is to be distributed to their three children, is immaterial. He retained the beneficial interest in the property during her lifetime by requiring the income to be used to discharge his contractual obligation.

It is unimportant whether or not petitioner made a profitable bargain with his wife. It is true that he released his right of curtesy in her estate and she released her dower interest in his property, but such release on the part of the one was not necessarily the moving consideration for the release on the part of the other. The wife may have owned but little if any property, and petitioner may and apparently did possess an estate of very large value. In any event, petitioner agreed to pay his wife, in consideration of her release, the sum stipulated in the trust instrument, and obviously the parties did not contemplate that petitioner should be relieved of his obligation in the event the wife obtained a divorce.

The fact that the wife was subsequently granted an absolute divorce, without any provision for property settlement or alimony, and thereafter petitioner was under no legal duty to her growing out of the marital relation, does not in anywise vitiate the obligation assumed by petitioner pursuant to the terms of the trust agreement. In *Robert Glendinning et al., Executors*, 36 B. T. A. 486; affd., 97 Fed. (2d) 51, we held that a legal obligation arose from the trust agreement itself, and the income was, therefore, taxable to the husband, the grantor of the trust, notwithstanding that in the absence of such agreement his obligation to support and maintain his wife would have been terminated under the law of Pennsylvania by her divorce and remarriage.

In *Helvering* v. *Brooks*, 82 Fed. (2d) 173, reversing 31 B. T. A. 70, the essential facts were similar to those of the instant proceeding. There the husband created an irrevocable trust which provided for the payment of $12,000 per year to the wife out of the trust income, as a settlement of their property rights arising from the relationship of the marriage. The wife was then suing her husband for divorce, and the decree subsequently entered contained no provision as to alimony or property rights of the wife. The court held that the income was taxable to the husband, saying:

The taxpayer argues that there is a distinction between an agreement to pay alimony and an agreement for the settlement of property rights between husband and wife. The asserted distinction is without substance on the present issue. Whether the trust income is used to discharge the husband's duty, made specific by agreement, to support the wife, *or to discharge an*

*obligation to pay her agreed sums for a release of rights in his property*, can not be material in determining the taxability of the husband. The creation of a trust the income of which is to be used to discharge any legal obligation of the settlor enables him to enjoy the benefit of the income; hence the income is properly taxable to him (citing authorities which include among others *Douglas* v. *Willcuts, supra*). Indeed, in the *Douglas* case itself the trust provisions for the wife were in settlement not only of alimony but also "of any and all dower rights or statutory interests in the estate" of the husband, and the court pointed out * * * that this did not affect the essential quality of the payments. [Italics supplied.]

Cf. *Commissioner* v. *Hyde*, 82 Fed. (2d) 174, reversing 31 B. T. A. 256; *Albert C. Whitaker*, 33 B. T. A. 865, 868; and *Thorne Donnelley*, 37 B. T. A. 90.

Petitioner cites *Henry Oliver Rea*, 35 B. T. A. 1132, as controlling under the facts of the present case. Such contention overlooks an important difference in the facts. In that proceeding we held that the trust income, which was payable to the wife during her lifetime and after her death to the two children, with contingent remainder over to the grantor, constituted a mere gift to the wife. The transfer was wholly without consideration, and the payment of the income to the wife did not discharge any legal obligation of the grantor. This is plainly indicated by the following quotation from our opinion at page 1134:

The trust agreement does not show on its face that it was created to provide income for the support of the wife or in lieu of alimony, or that it constituted a settlement of the rights of the parties growing out of the marital relationship existing between them. It does not refer to a contemplated separation of the parties and contains no waiver or relinquishment by the wife of support or of her interest in petitioner's estate. * * * The instant proceeding is distinguishable from the above cases [including *Douglas* v. *Willcuts, supra*] involving income from trusts created by the husband for the wife in that therein either the separation agreement, decree of the court, or stipulation of the taxpayer and the Commissioner disclosed that the income involved was provided for and paid in lieu of alimony or the wife's interests in the husband's property. Furthermore, in all of the above cases there was an existing legal obligation on the part of the taxpayer, which obligation was discharged with the income derived from the trust created by the taxpayer.

Cf. *Edward T. Hall*, 36 B. T. A. 398.

Petitioner also cites *Commissioner* v. *Tuttle*, 89 Fed. (2d) 112, affirming 31 B. T. A. 782, as controlling in the present proceeding. However, the opinion of the court clearly distinguishes that decision on two material points from the case at bar. It was there held that the income from a trust created for the benefit of the taxpayer's wife was not taxable to him for the reason, first, that under Michigan law the settlement was not alimony but analogous to a lump-sum property settlement. The second point stressed by the court was that the transfer was absolute, and there remained no continuing

obligation on the part of the taxpayer for support or maintenance, and no debt to be paid out of his income, either actually or constructively. Upon the creation of the trust the grantor's obligations to his wife under both the contract and the decree were fully and finally liquidated.

On the second issue respondent's determination is approved.

*Decision will be entered under Rule 50.*