VERDAN W. AND ROLENE BUKOVE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bukove v. Commissioner
Docket No. 20706-84
United States Tax Court
T.C. Memo 1989-588; 1989 Tax Ct. Memo LEXIS 586; 58 T.C.M. (CCH) 552; T.C.M. (RIA) 89588; October 30, 1989
Jack E. Hildreth, Jr., for the petitioners. Louis B. Jack, for the respondent. RUWE
MEMORANDUM FINDINGS OF FACT AND OPINION RUWE, Judge: Respondent determined a deficiency in petitioners' Federal income tax of $ 8,911.38 for the taxable year ending December 31, 1980. The issues for decision are: (1) Whether petitioners' basis in Red Mountain VII, a limited partnership, is $ 8,000 or $ 32,000; (2) whether petitioners are entitled to claim any of the alleged $ 160,000 loss reported by Red Mountain VII in 1980 as a deduction *588 from their 1980 income; (3) whether petitioners are entitled to claim a theft loss in 1980 in connection with their investment in Red Mountain VII; and (4) whether respondent's motion to dismiss for lack of prosecution as to petitioner, Verdan W. Bukove, should be granted. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Verdan W. Bukove and Rolene Bukove were husband and wife and resided in Orange, California at the time they filed their petition in this case. They timely filed their joint Federal income tax return for 1980 with the Internal Revenue Service Center in Fresno, California. Verdan Bukove died subsequent to the filing of the petition. No probate proceedings were ever initiated and there has been no formal appointment of a personal representative. Petitioners were married for approximately 47 years when Verdan Bukove died in 1987. They have two children, Robert and Michael. In 1977, petitioners' eldest son Robert recommended the services of Leslie W. Hawkey, Sr., of "Hawkey Tax Services." Mr. Hawkey prepared petitioners' 1977 Federal *589 income tax return and either Mr. Hawkey or his daughter, Ann Hawkey, were responsible for preparing petitioners' 1978, 1980, 1981, 1982, and 1983 tax returns. [1] In 1977, petitioners began investing in various investments promoted by Mr. Hawkey. In 1980, petitioners invested in a limited partnership known as "Red Mountain VII" (Red Mountain). On December 14, 1980, petitioners executed an "Agreement of Limited Partnership of the Red Mountain VII Limited Partnership," which was ostensibly formed to acquire, own, and operate land leased mining claims located in San Bernardino County, in the State of California. Under the Red Mountain limited partnership agreement the partners' capital contribution and profit interest were stated to be as follows: General Partner
Capital Contribution
Profit Interest
Hearst Hammond
-0-
-0-
Limited Partners
Capital Contribution
Profit Interest
Verdan & Rolene
Bukove
$  32,000
20%
Donald E. & Janice L.
Spelbring
8,000
5%
Nancy S. Kneisley
8,000
5%
Hawkey Family Trust
Ann Hawkey, Successor Trustee
104,000
65%
Oscar & Lucia
Gonzales De Chavez
8,000
5% *590 To acquire their interest in Red Mountain, petitioners executed a check dated December 30, 1980, which was payable to L. W. Hawkey in the amount of $ 32,000. The check was drawn on Bank of America. On the bottom of the check, Rolene Bukove wrote: "This check is used to purchase 20 percent of ownership in a partnership formed to mine forty (40) acres of land in San Bernardino County of California." Initially, Mrs. Bukove told Mr. Hawkey that she could not write a check for that amount because she did not have $ 32,000. Mr. Hawkey told the petitioners that he would give them a check for $ 24,000, which along with $ 8,000 from their savings account, would cover the $ 32,000 check. Though petitioners had doubts about the legality of the transaction, Mr. Hawkey advised them that the transaction was legal. Accordingly, Mr. Bukove received a check from "Hawkey Investments" in the amount of $ 24,000. The check was signed by L. W. Hawkey. Petitioners also obtained a cashier's check payable to Rolene or Verdan Bukove in the amount of $ 8,000. This $ 8,000 was from petitioners' savings account at Home Savings and Loan Association. Mr. Bukove endorsed these two checks and, on or about *591 December 31, 1980, deposited them into petitioners' checking account at Bank of America. Mr. Bukove made a handwritten notation in the left hand corner of the deposit slip: "Paid to Mr. Bill Hawkey for tax shelter - 12/31/80." The term "tax shelter" referred to petitioners' investment in the Red Mountain limited partnership. A Mining Lease dated December 28, 1980 was executed between Hearst Hammond, as general partner for Red Mountain, lessee, and Ann Hawkey, as president of Annkey, Inc., lessor. The property leased was described as "Casaday Group #10" (Casaday Group). Consideration for the lease was a three percent royalty on net receipts on all sales or ores extracted from Casaday Group. Ann Hawkey, who was approximately 19 years old at the time, did not know until several years later that she was president of Annkey. She also had never visited the mine site, and knew nothing about the corporation or its assets. A Development Agreement dated December 28, 1980 was signed between Hearst Hammond, as general partner for Red Mountain and L. W. Hawkey, as assistant secretary for FCL Enterprises, Inc. (FCL Enterprises). The Development Agreement provided that the contractor, FCL *592 Enterprises "agreed to do the initial development work on the Casady (sic) Group #10 * * * for a total price of One Hundred Sixty Thousand ($ 160,000.00) Dollars." The Development Agreement also provided that Red Mountain was to pay $ 40,000 at the execution of the lease, and additional payments pursuant to an attached promissory note. The promissory note was not offered into evidence. Red Mountain filed a U.S. Partnership Return of Income (Form 1065) for the taxable year 1980. The return stated that the partners contributed $ 160,000. The return also reflects deductions for "Royalty Expense" in the amount of $ 160,000. The return stated no other items of income or expense. The balance sheet portion of the return shows no assets or liabilities and Schedule N shows an ordinary loss of $ 160,000. Of this $ 160,000 loss, petitioners claimed a deduction in the amount of $ 32,000 as their distributive share of losses, on their 1980 tax return. Red Mountain filed Federal income tax returns for the taxable years 1981, 1982, and 1983 showing no income or expenses for those years. Petitioners never received a prospectus regarding their investment in Red Mountain. They did not seek *593 independent advice about the tax consequences of Red Mountain before making their investment. Petitioners had no previous experience in mining or mining investments. In 1982, petitioners made another investment with Mr. Hawkey for $ 40,000. From 1977 through 1982, they paid over $ 100,000 to Mr. Hawkey for various investments which he was promoting. In 1987, Leslie W. Hawkey, Sr., pled guilty to mail fraud, conspiracy to defraud the United States, and aiding and abetting the preparation of a false income tax return. None of the offenses charged nor the guilty plea, however, relate to the Red Mountain promotion. OPINION The first issue for decision is whether petitioners' basis in Red Mountain is $ 8,000 or $ 32,000. On brief, petitioners claim that they used $ 8,000 of their own money and borrowed $ 24,000 from Leslie Hawkey to purchase their interest in Red Mountain to give them a basis in Red Mountain of $ 32,000. Respondent contends that petitioners' basis in Red Mountain is limited to $ 8,000, which is their actual out-of-pocket cost after swapping checks with the promoter. Whether petitioners' basis is $ 8,000 or $ 32,000 depends upon whether the $ 24,000 check which *594 Mr. Hawkey provided to the petitioners was a loan. Petitioners bear the burden of proof. Rule 142(a). [2]
Petitioners offered no credible evidence to support their position that the $ 24,000 check from Mr. Hawkey represents a loan. Ann Hawkey testified that she searched Mr. Hawkey's records and was unable to find any evidence of loan payments from the Bukoves, or any evidence of a promissory note. In fact, Rolene Bukove testified that neither she nor her husband had agreed to repay Mr. Hawkey for the $ 24,000 check. Mrs. Bukove also testified neither she nor her husband ever discussed with Mr. Hawkey the possibility that his $ 24,000 check was a loan. We find that petitioners have failed to meet their burden of proof. The $ 24,000 check from Mr. Hawkey to petitioners was not a loan and, therefore, petitioners' basis in Red Mountain is limited to $ 8,000. Sec. 722. The second issue for decision is whether petitioners are entitled to claim any of the alleged $ 160,000 *595 loss reported by Red Mountain in 1980 as a deduction from their 1980 income. Petitioners contend that they are entitled to a deduction for their investment in Red Mountain as their distributive share of losses reported by Red Mountain in 1980. Petitioners argue that the $ 160,000 loss reported by Red Mountain was the result of an ordinary and necessary business expense. Petitioners have also argued that the loss is the result of mine development expenses paid by Red Mountain in 1980. Petitioners have also argued that they are entitled to an abandonment loss in 1980. Respondent, in his notice of deficiency, determined that Red Mountain was not engaged in an activity with an objective of making a profit and, therefore, petitioners cannot deduct any part of the $ 160,000 loss reported by Red Mountain. Section 162 allows a taxpayer to claim as a deduction all the ordinary and necessary expenses of carrying on a trade or business. Section 616(a) allows a taxpayer to claim a deduction for all expenditures paid or incurred during the taxable year for the development of a mine if paid or incurred after the existence of ores or minerals in commercially marketable quantities. Section *596 165 allows a taxpayer to claim as a deduction any loss sustained in the taxable year. For the deduction to be valid under sections 162, 165(c)(1) and (2), and 616(a), the taxpayer must show that he engaged in the activity with an actual and honest objective of making of profit. Horn v. Commissioner, 90 T.C. 908, 932-933 (1988). While a reasonable expectation of profit is unnecessary, a taxpayer's profit objective must be bona fide. Dreicer v. Commissioner, 78 T.C. 624, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Whether there is an objective to make a profit is a factual issue to be resolved on the basis of all the surrounding facts and circumstances. Finoli v. Commissioner, 86 T.C. 697, 722 (1986). The burden of establishing the requisite profit objective is on petitioner. Beck v. Commissioner, 85 T.C. 557, 569 (1985). We give greater weight to objective facts than to taxpayer's after-the-fact statements of intent. Thomas v. Commissioner, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986); sec. 1.183-2(a), Income Tax Regs.
Section *597 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine objective factors for determining whether an activity is engaged in for profit.[3] Not all of the factors are applicable in every case and no one factor is controlling. Sec. 1.183-2(b), Income Tax Regs. Since petitioners are claiming their deduction through a partnership, profit objective is determined at the partnership level. Fox v. Commissioner, 80 T.C. 972, 1007 (1983). Where a limited partnership is involved, as in the instant case, the primary focus is on the action of the general partners. Finoli v. Commissioner, supra at 722. *598 After examining the record, we conclude that petitioners have failed to establish that Red Mountain was engaged in an activity with an actual and honest objective of making a profit. Red Mountain was not operated in a businesslike manner. No books, records, or financial statements for Red Mountain were offered into evidence by petitioners and, it is questionable whether any existed. Petitioners did not call Hearst Hammond, the general partner, to testify about the activities of Red Mountain. Mr. Hawkey, the promoter of Red Mountain, had no expertise in mining, and no evidence was offered to establish that Hearst Hammond had any expertise in mining. Finally, no profits were ever earned by Red Mountain. The third issue for decision is whether petitioners are entitled to claim a theft loss in 1980 in connection with their investment in Red Mountain. Petitioners contend that they sustained a theft loss in 1980 because they were "swindled" by Mr. Hawkey, when they made their investment in Red Mountain. Section 165(a) allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(c)(3) allows a loss deduction *599 for the theft of property not connected with a trade or business. Section 165(e) treats theft losses as sustained during the taxable year in which the taxpayer discovers the loss. Petitioners must, therefore, prove that they sustained and discovered a theft loss in 1980. Without ruling on whether petitioners actually sustained a theft loss, we find that petitioners have failed to establish that they discovered a theft loss in 1980. Mr. Hawkey continued to prepare the petitioners' tax returns through 1983. In 1982, petitioners made another investment with Mr. Hawkey for $ 40,000. Rolene Bukove testified that she still trusted Mr. Hawkey in 1983, and was not aware that he was under criminal investigation until her attorney informed her later that year. These facts, combined with the fact that petitioners' investment in Red Mountain was made within the final days of the 1980 taxable year, leads us to conclude that petitioners did not discover a theft loss during 1980. However, petitioners further contend that the knowledge of Mr. Hawkey's alleged theft from petitioners in 1980 is imputed to them, since he was their agent, thus entitling petitioners to a theft loss deduction *600 in 1980. We recently decided an argument similar to petitioners in Marine v. Commissioner, 92 T.C. 958 (1989). In Marine, the taxpayers invested in two limited partnerships which were promoted by Gerald Schulman. He was also the general partner of these limited partnerships. The investments were made in 1979 and 1980. Mr. Schulman was responsible for organizing, promoting, and syndicating 600 other similarly structured limited partnerships. The limited partnerships reported large losses from interest paid on short-term loans, and the taxpayers claimed a deduction for their distributive share of these losses. The taxpayers conceded that these loans were sham transactions, but argued that they were entitled to a theft loss deduction for their initial investment in the limited partnerships. It was not until 1987 or 1988 when they discovered that they were possible victims of theft. Nevertheless, the taxpayers argued that Mr. Schulman's knowledge of his theft in the initial year of investment should be imputed to the limited partners, thus entitling them to a theft loss deduction in 1979 and 1980. We held that the Mr. Schulman's knowledge of his theft was not *601 imputed to the taxpayers because it would contravene the intent of Congress. Marine v. Commissioner, 92 T.C. at 977-978. In the instant case, Mr. Hawkey was the promoter of Red Mountain. He also prepared petitioner's tax returns. Though Mr. Hawkey may have been aware of the theft, if any, at the time petitioners invested in Red Mountain, his knowledge is not imputed to petitioners. Marine v. Commissioner, supra.Accordingly, we find that petitioners did not discover a theft loss, vis-a-vis Mr. Hawkey, in 1980. Decision will be entered for the respondent . [4]
Footnotes
1. The record does not indicate whether petitioners' 1979 Federal income tax return was prepared by Mr. Hawkey, or his daughter, Ann Hawkey.↩
2. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code, as amended and in effect for the year in issue.↩
3. These factors are: (1) Manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) expectation that assets used in activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer, and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs.↩
4. Because we find for respondent, respondent's motion to dismiss for lack of prosecution against Verdan W. Bukove is denied.↩