934 F.2d 573
 67 A.F.T.R.2d 91-700
 AGRO SCIENCE CO., and Bavaro Investment Co., Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
R & D PARTNERS-82, and Donald D. Spear, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
ALPHA MEDICAL RESEARCH ASSOCIATES, and Marc Geller,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 90-4265.
 United States Court of Appeals,
Fifth Circuit.
 March 25, 1991.
 
 William D. Wright, William E. Bailey, Bailey, Vaught, Robertson & Co., Dallas, Tex., for petitioners-appellants.
 Abraham N.M. Shashy, Jr., Chief Counsel, IRS, Shirley D. Peterson, Asst. Atty. Gen., Dept. of Justice, Tax Div., Kimberly Stanley, Kenneth L. Greene, Gary R. Allen, Chief, Appellate Sec., Tax. Div., Dept. of Justice, Washington, D.C., for respondent-appellee.
 Appeals from the Tax Court of the United States.
 Before REAVLEY, JONES and SMITH, Circuit Judges.
 REAVLEY, Circuit Judge:
 
 
 1
 The Commissioner of Internal Revenue (Commissioner) issued final partnership administrative adjustment notices to appellants Agro Science Company (Agro), R & D Partners--82 (R & D), and Alpha Medical Research Association (Alpha) (collectively the Partnerships). The Commissioner's notices denied the Partnerships' deductions on their 1982 and 1983 tax returns for expenses incurred in conjunction with research contracts that each executed with Coral Sociedade Brasileira de Pesquisas e Desenvolvimenta, Ltda. (Coral). The United States Tax Court consolidated the appellants' petitions for readjustment, and after trial entered decisions disallowing the Partnerships' Coral-related deductions. We affirm.
 
 I. BACKGROUND
 
 2
 Coral agreed in 1982 to develop a different monoclonal antibody (MAB) conjugate[1] for each of the Partnerships. In exchange, each agreed to give Coral $75,000 cash and execute a $525,000 promissory note in Coral's favor (a Research Note). Each Research Note was payable in Brazilian new cruzeiros (cruzeiros) over a four-year period beginning seven years from its execution date at an annual interest rate of 10%. In 1982 the cruzeiro was undergoing hyper-inflation and devaluation against the dollar, yet the Research Notes contain no inflationary index.
 
 
 3
 Coral's officers, Allen F. Campbell and Donald Spear, recruited the Partnerships' members, stressing to them the tax advantages of executing the Research Notes. They explained that the consensus among economists was that the cruzeiro would undergo inflation of approximately 80% annually for the foreseeable future. Each partnership deducted its entire $600,000 obligation to Coral, plus interest and expenses, in 1982 and 1983. By 1988, the cruzeiros that cost $525,000 in 1982 could be paid to Coral for approximately $184.
 
 
 4
 Though Coral fulfilled its contractual obligations by producing the MABs for the Partnerships, the Commissioner refused to allow the Partnerships to deduct the payments, debt, and expenses associated with the Coral transactions. After a consolidated trial on the Partnerships' petitions for readjustment, the Tax Court held that the debt represented by the Research Notes is illusory, the Partnerships did not contract with Coral pursuant to a bona fide profit motive, and Coral's work for the Partnerships is not research within the meaning of 26 U.S.C. Sec. 174. Accordingly, the Tax Court entered decisions disallowing the Partnerships' deductions.
 
 II. DISCUSSION
 
 5
 A. ECONOMIC SUBSTANCE AND THE RESEARCH NOTES
 
 
 6
 On appeal, the Partnerships do not dispute the following Tax Court findings: 1) Coral's officers promoted the MAB projects primarily as tax shelters and stressed the real inflationary pressures on the cruzeiro; 2) Coral contravened standard Brazilian commercial practice by executing promissory notes in 1982 that did not contain an inflationary correction mechanism; 3) the interest Coral charged on the Research Notes was less than ten percent of the Brazilian market interest rate in 1982; and 4) Coral could have profitably produced each MAB conjugate for well under the $75,000 cash paid by each partnership. These facts demonstrate that at the time the Partnerships executed the Research Notes, no one expected to pay any significant part of the $525,000 Research Note debt claimed on the Partnerships' tax returns.
 
 
 7
 There is no material difference between the Partnerships' sham research debt and the sham interest payments disallowed as deductions in Knetsch v. United States, 364 U.S. 361, 365-66, 81 S.Ct. 132, 135, 5 L.Ed.2d 128 (1960). See also Levin v. Commissioner, 87 T.C. 698, 734 (1986) (interest accrued on sham long-term obligations payable in foreign currency undergoing inflation not deductible), aff'd, 832 F.2d 403 (7th Cir.1987). Like the annuity bonds at issue in Knetsch, the parties executed the Research Notes exclusively for the Partnerships' tax benefits. A debt created for the exclusive purpose of generating tax savings is not genuine and must be disregarded for tax purposes. Campbell, 897 F.2d at 1321; Jacobson v. Commissioner, 915 F.2d 832, 837 (2d Cir.1990).
 
 
 8
 We agree with the Tax Court that the Partnerships are entitled to no deduction as a result of the hollow debt represented by the Research Notes.B. PROFIT MOTIVE AND THE CASH INVESTMENTS
 
 
 9
 Congress allows deductions under 26 U.S.C. Sec. 162 for expenses of carrying on activities that constitute a taxpayer's trade or business, under 26 U.S.C. Sec. 174 for research and development expenses in connection with a trade or business, and under 26 U.S.C. Sec. 212 for expenses incurred in connection with activities undertaken to produce or collect income. Expenditures may only be deducted under sections 162, 174, and 212 if the facts and circumstances indicate that the taxpayer made them primarily in furtherance of a bona fide profit objective independent of tax consequences. 26 C.F.R. Sec. 1.183-2(a) (1990); Mayrath v. Commissioner, 357 F.2d 209, 214 (5th Cir.1966); Drobny v. Commissioner, 86 T.C. 1326, 1340 (1986).
 
 
 10
 The Tax Court found that the Partnerships did not intend to profit, except by tax deductions, from their $75,000 cash investments in Coral projects. That finding stands unless it is clearly erroneous. Masat v. Commissioner, 784 F.2d 573, 575 (5th Cir.1986). We think the court's finding manifestly correct.
 
 
 11
 The Tax Court heard testimony from all general partners willing to testify and concluded that: 1) the partners were unconcerned about the financial condition of their respective partnerships or their fellow partners; 2) the partners had a shallow or nonexistent understanding of their respective partnerships' potential profitability, liabilities, or management; 3) most partners knew little or nothing about the research conducted for them by Coral; 4) some partners attended one partnership meeting while others knew nothing about partnership meetings; and 5) many partners admitted awareness of the cruzeiro devaluation and the promised tax benefits of investment resulting from the Research Notes.
 
 
 12
 The Partnerships challenge only the relevance of these findings to profit motive, not their accuracy. To us, the advertised eight-to-one tax write-off purportedly facilitated by Coral's cruzeiro scheme indicates why the Partnerships contracted with Coral. Still, contrary to the Partnerships' assertion, the Tax Court appropriately looked to the factors listed in 26 C.F.R. Sec. 1.183-2(b) (1990) in discerning profit motive bona fides. See, e.g., Tallal v. Commissioner, 778 F.2d 275, 276 (5th Cir.1985); Drobny, 86 T.C. at 1342. The court did not consider irrelevant factors in concluding that the partners only invested in their respective partnerships to lessen their tax obligations. Even the constituencies of lay partnerships formed to contract for highly speculative, technical research services must take interest in the basic business and profitability of their undertakings to demonstrate a legitimate profit motive. See generally Drobny, 86 T.C. at 1343-48. Also, there is no evidence that the Tax Court failed to consider objective facts and circumstances proffered by the Partnerships to support their profit motive legitimacy claim.
 
 
 13
 Alternatively, the Partnerships contend that it was error for the Tax Court to treat them together in discerning profit motive. We disagree. The profit motive of a partnership is determined at the partnership level. Tallal, 778 F.2d at 276. The testimony of general partners and promoters taken as a whole is relevant in determining a partnership's profit motive, because these individuals control a partnership's activities. Fuchs v. Commissioner, 83 T.C. 79, 98 (1984).
 
 
 14
 Agro, R & D, and Alpha executed virtually identical research agreements with Coral. The three agreements differ only in date of execution, MAB description, and promissory note amount expressed in cruzeiros. None of the agreements were negotiated. Coral's representatives simply picked a group of MABs to offer for sale and solicited partnerships willing to sponsor a MAB. Coral sold each MAB project for the exact same consideration in United States currency.
 
 
 15
 Unlike Alpha and R & D, Agro's partners are involved in the cattle business and the MAB that they selected concerns a cattle disease. But, especially in light of the strong evidence as to tax motive, this distinguishing characteristic is insufficient compared to the other evidence of homogeneity to render the tax court's collective treatment of the Partnerships' profit motive clearly erroneous.
 
 
 16
 The weight of the evidence indicates that the Partnerships purchased congruous research projects under identical conditions with the primary intent of realizing tax advantages.
 
 III. CONCLUSION
 
 17
 Our debt-authenticity and profit-motive holdings foreclose all deductions presently at issue.[2] We thus AFFIRM the Tax Court's decisions against each of the Partnerships.
 
 
 
 [1]
 MABs are laboratory copies of disease-fighting agents produced naturally in the bodies of humans and some animals. See United States v. Campbell, 704 F.Supp. 715, 719 (N.D.Tex.1988) (explaining procedure Coral uses to produce MAB conjugates), aff'd as modified, 897 F.2d 1317 (5th Cir.1990). Doctors and veterinarians use MAB conjugates to diagnose and treat various diseases
 
 
 [2]
 As in Mayrath, our profit motive holding makes it unnecessary to reach the Tax Court's discussion of the bona fides of Coral's research efforts. See 357 F.2d at 212 n. 3. We caution the Tax Court against employing its ill-suited forum to distinguish science from folly, except possibly in the most extreme cases