PEAT OIL AND GAS ASSOCIATES, JAMES KARR, A PARTNER OTHER THAN THE TAX MATTERS PARTNER, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 30296–87, 20081–88, Filed March 31, 1993.
20130–88, 820–91,
24514–91, 30440–91.

*Dennis N. Brager* and *Jackson D. Hamilton,* for petitioners. *Debra K. Estrem,* for respondent.

COHEN, *Judge:* Respondent sent notices of final partnership administrative adjustment (FPAA) disallowing certain deductions claimed on partnership returns of three partnerships. Petitions were filed for the years in issue as follows:

| Docket No. | Partnership | Tax year |
|---|---|---|
| 30296–87 | Peat Oil and Gas Associates (POGA) | 1983 |
| 20081–88 | Syn-Fuel Associates 1982 (SFA-1982) | 1982 |
| | | 1983 |
| | | 1984 |
| | | 1985 |
| 20130–88 | POGA | 1984 |

[1] Cases of the following petitioners are consolidated herewith: Syn-Fuel Associates 1982, John McCurdy, a Partner Other Than the Tax Matter Partner, docket No. 20081–88; Peat Oil and Gas Associates, James Karr, a Partner Other Than the Tax Matters Partner, docket No. 20130–88; Peat Oil and Gas Associates, a Limited Partnership, Joseph Yadgaroff, a Partner Other Than the Tax Matters Partner, docket No. 820–91; Syn-Fuel Associates, a Limited Partnership, Keith Gaskell, a Partner Other Than the Tax Matters Partner, docket No. 24514–91; and Peat Oil and Gas Associates, a Limited Partnership, Robert Ferguson, a Partner Other Than the Tax Matters Partner, docket No. 30440–91.

| Docket No. | Partnership | Tax year |
|---|---|---|
| 820–91 | POGA | 1986 |
| 24514–91 | Syn-Fuel Associates | 1983 |
| | (SFA) | 1984 |
| | | 1985 |
| | | 1986 |
| | | 1987 |
| 30440–91 | POGA | 1987 |

The disputed items deducted on the partnership tax returns are as follows:

| Partnership | Return year | Amount of license fee | Amount of interest payment | Research and development expenses |
|---|---|---|---|---|
| POGA | 1983 | $7,752,875 | $943,086 | - - - |
| | 1984 | 5,825,219 | 1,334,470 | - - - |
| | 1986 | - - - | 1,569,093 | - - - |
| | 1987 | - - - | 1,570,124 | - - - |
| SFA-1982 | 1982 | 5,961,600 | 2,492 | - - - |
| | 1983 | 5,779,000 | 399,938 | $658,000 |
| | 1984 | 5,783,400 | 721,367 | 162,000 |
| | 1985 | 4,467,150 | 1,021,951 | - - - |
| SFA | 1983 | 2,660,750 | 323,666 | - - - |
| | 1984 | 5,783,400 | 721,367 | - - - |
| | 1985 | - - - | 538,719 | - - - |
| | 1986 | - - - | 538,584 | - - - |

These deductions were claimed in addition to expenses relating to the oil and gas activities of the partnerships, which are not disputed by respondent.

The parties have stipulated:

15. If a final determination of the Tax Court holds that venue on appeal in these cases lies to the Sixth Circuit, then decisions should be entered which reflect that the Partnerships' tax returns were correct as filed for each of the years at issue, pursuant to *Golsen v. Commissioner*, 54 T.C. 742 (1970), *aff'd* 445 F.2d 985 (10th Cir. 1971), *cert. denied*, 404 U.S. 940 (1971).

16. If a final determination of the Tax Court holds that venue on appeal lies anywhere but the Sixth Circuit, then decisions should be entered as shown on the following Exhibits, which reflect certain government concessions:

| Partnership | Tax year | Exhibit No. |
|---|---|---|
| "SFA, 192" | 1982 | 30-AD |
| | 1983 | 31-AE |
| | 1984 | 32-AF |

| Partnership | Tax year | Exhibit No. |
|-------------|----------|-------------|
|             | 1985     | 33-AG       |
| "POGA"      | 1983     | 34-AH       |
|             | 1984     | 35-AI       |
|             | 1985     | 36-AJ       |
|             | 1986     | 37-AK       |
| "SFA"       | 1983     | 38-AL       |
|             | 1984     | 39-AM       |
|             | 1985     | 40-AN       |
|             | 1986     | 41-AO       |
|             | 1987     | 42-AP       |

In addition, the Court's decision should reflect its determination of the deductibility of the unagreed adjustments, as defined in paragraph 17, following.

17. Except as detailed in Exhibits 30-AD through 42-AP above, no adjustments are to be made to any items on any of the Partnerships' income tax returns for the years at issue, except as determined by the Court with respect to unagreed adjustments. Unagreed adjustments are those items disallowed in the FPAA's and not conceded by the government in Exhibits 30-AD through 42-AP above. Neither the petitioners nor the respondent concedes the unagreed adjustments.

\* \* \* \* \* \* \*

20. The parties incorporate herein by reference the entire record of the proceeding in the cases of *Karr v. Commissioner,* Docket No. 309–87, and *Smith v. Commissioner,* Docket No. 48306–86, including the transcripts of the proceeding before the United States Tax Court, the Stipulation of Facts in those cases, and the Exhibits, as if they had been presented to the Tax Court in the cases captioned herein.

21. The events surrounding the formation and operation of "SFA, 1982" were so similar to the facts presented with respect to "SFA" and "POGA" at the *Smith* and *Karr* trials that the Court shall determine, except as specifically agreed herein, the issues in this case based upon the record in the *Smith* and *Karr* cases. To amplify, it is the belief of the parties that due to the similarity of factual circumstances no purpose would be served by presenting additional evidence (other than evidence presented herein) to the Court, and the Court may decide this case as if the evidence presented in the *Smith* and *Karr* cases were presented with regard to "SFA, 1982."

In T.C. Memo. 1993-130, filed this date, it has been found that the principal place of business of the three partnerships at the times the petitions were filed was in New York. Given that factual determination, appeal will lie to the Court of Appeals for the Second Circuit. Sec. 7482(b)(1)(E). The stipulation of the parties, therefore, requires that we again resolve the disputed deductions set forth above.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue and when the petitions were filed, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. The stipulation also incorporates the entire record in the cases of *Smith v. Commissioner,* 91 T.C. 733 (1988) (*Smith and Karr*), affd. sub nom. *Karr v. Commissioner,* 924 F.2d 1018 (11th Cir. 1991) (*Karr*), and revd. by the Court of Appeals for the Sixth Circuit in *Smith v. Commissioner,* 937 F.2d 1089 (6th Cir. 1991) (*Smith*). The findings of fact in our prior opinion, 91 T.C. at 734-754, are hereby reaffirmed and incorporated in haec verba.

## ULTIMATE FINDINGS OF FACT

The synthetic fuel activities of the partnerships lacked economic substance. The partnerships did not engage in those activities for the purpose of or with an actual and honest objective of making a profit.

## OPINION

We "follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone." *Golsen v. Commissioner,* 54 T.C. 742, 757 (1970), affd. 445 F.2d 985 (10th Cir. 1971). On the other hand, if appeal from our decision lies to a Court of Appeals that does not have a decision squarely in point, we, as a court of national jurisdiction, must thoroughly reconsider an issue in light of the reasoning of a reversing appellate court and, if still of the opinion that our original result was right, follow our own beliefs until the Supreme Court decides the point. *Lawrence v. Commissioner,* 27 T.C. 713, 716-717 (1957), revd. on other grounds 258 F.2d 562 (9th Cir. 1958). Here, of course, we also consider the opinion of the Court of Appeals for the Eleventh Circuit in *Karr v. Commissioner,* 924 F.2d 1018 (11th Cir. 1991), affg. *Smith v. Commissioner,* 91 T.C. 733 (1988).

In our opinion in *Smith and Karr,* 91 T.C. at 753, we discussed profit objective and economic substance under the unified approach adopted by this Court in *Rose v. Commissioner,* 88 T.C. 386, 414 (1987), affd. 868 F.2d 851 (6th Cir. 1989). Subsequent to our opinion in *Smith and Karr,* the Court of Appeals for the Sixth Circuit affirmed our decision in *Rose* but did not adopt the generic tax shelter analysis reflected in our opinion in that case. *Rose v. Commissioner,* 868 F.2d at 853.

In reversing our opinion, the Court of Appeals for the Sixth Circuit in *Smith* stated:

> In its factual aspect, the Tax Court's conclusion that the transactions in question lacked economic substance leaves us "with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). We recognize that this result is at odds with the Eleventh Circuit's decision in *Karr* (see note 1, *supra*), but under the law of this circuit the proper test is "whether the transaction has *any* practicable effects other than the creation of income tax losses." *Rose,* 868 F.2d at 853 (emphasis supplied). It is crucial, moreover, that this inquiry be conducted from the vantage point of the taxpayer at the time the transactions occurred, rather than with the benefit of hindsight. *Hayden* [*v. Commissioner*], 889 F.2d [1548] at 1554-56 [(6th Cir. 1989)] (Nelson, J., dissenting); Treas. Reg. sec. 1.183-2(a). [*Smith v. Commissioner,* 937 F.2d at 1096.]

The Court of Appeals, relying on its opinion in *Bryant v. Commissioner,* 928 F.2d 745 (6th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-527, continued:

> The conclusion in *Bryant* was similar to the one we reach in this case— "a reasonable expectation of profit [subjectively] is not to be required;" rather we look to whether "the taxpayer entered the activity, or continued the activity, with the objective of making a profit . . . even though the *expectation* of profit might be considered *unreasonable.*" *Id.* at 750 (emphasis added) quoting S. Rep. No. 552, *supra.* Here, as in *Bryant,* we conclude that the Tax Court was in error in questioning the transaction on the basis of whether it "was *likely* to be profitable." *Id.* [*Smith v. Commissioner,* 937 F.2d at 1097.]

In our view, "*Rose* did not depart from the principle that a reasonable expectation of profit (as contrasted to an actual and honest profit objective) is not required. See *Rose v. Commissioner,* 88 T.C. at 411, quoting *Jasionowski v. Commissioner,* 66 T.C. 312, 321 (1976)." *McCrary v. Commissioner,* 92 T.C. 827, 846 (1989). We stated in *McCrary:* "A

transaction that has a business purpose or profit objective will survive the *Rose* analysis of economic substance. *Rose* simply reformulated a two-pronged test into a unified approach in certain types of cases." *McCrary v. Commissioner,* 92 T.C. at 845.

Thus, we did not reach our conclusion in *Smith and Karr* on the basis of whether the transaction was "likely to be profitable." The features of the arrangement were discussed by us as a predicate to determining the purpose of the partnerships in which the taxpayers invested. At 91 T.C. at 756, we stated:

respondent has conceded deductions and credits relating to * * * [the oil and gas] activities. Thus we cannot conclude that the partnerships totally lacked economic substance. The question remains: What, if anything, was the economic substance of the Koppelman Process activity of the partnerships? Specifically, were these partnerships engaged in the trade or business of developing energy sources from the Koppelman Process or were they in the business of financing the operations of other entities in exchange for tax benefits? The business activities of other entities directly involved in exploiting the Koppelman Process will not necessarily be attributed to the limited partnerships in which petitioners invested. See *Beck v. Commissioner,* 85 T.C. 557, 580 (1985).

Whether we are determining the existence of a profit objective or the status of an activity as a trade or business, we examine the appropriate factors at the partnership level. *Brannen v. Commissioner, supra* [78 T.C. 471 (1982), affd. 722 F.2d 695 (11th Cir. 1984)]; *Madison Gas & Electric Co. v. Commissioner,* 72 T.C. 521, 564-565 (1979), affd. 633 F.2d 512 (7th Cir. 1980). Citing *Surloff v. Commissioner,* 81 T.C. 210, 233 (1983), petitioners specify that "in determining whether the Partnerships had the requisite profit motive it is necessary to look at the motive and objectives of the promoters and managers of the Partnerships." * * * [Fn. ref. omitted.]

Our opinion in *Smith and Karr* examined in detail the motive and objectives of the promoters and managers of the partnerships and concluded that the structure precluded any economic benefit to the limited partners—the petitioner taxpayers. *Smith and Karr,* 91 T.C. at 764-765. The Court of Appeals for the Sixth Circuit seemed to give the limited partners the benefit of the possibility that some "practicable effects other than the creation of tax losses" might be realized by *other* persons associated with the venture. *Smith,* 937 F.2d at 1096.

We need not here decide whether we will follow the *Rose* approach in the future in view of its failure to gain accept-

ance by the Court of Appeals for the Sixth Circuit and others. See *Hunt v. Commissioner,* 938 F.2d 466, 471 n.5 (4th Cir. 1991), affg. T.C. Memo. 1989-660; *Collins v. Commissioner,* 857 F.2d 1383, 1386 (9th Cir. 1988), affg. *Dister v. Commissioner,* T.C. Memo. 1987-217. Further, it is not our place here to decide whether the test stated by the Court of Appeals for the Sixth Circuit in *Smith* and in *Bryant v. Commissioner,* 928 F.2d 745 (6th Cir. 1991), revg. T.C. Memo. 1989-527, is consistent with the Supreme Court's statement in *Commissioner v. Groetzinger,* 480 U.S. 23, 35 (1987), that, in order for a taxpayer to be in a trade or business, within the meaning of section 162, the "primary purpose" for engaging in the activity must be for profit. Using the traditional subjective and objective analyses that preceded *Rose,* the Court of Appeals for the Eleventh Circuit in *Karr* and the dissenting judge in *Smith* reach the same conclusion as that reached by us in *Smith and Karr.*

The Court of Appeals for the Eleventh Circuit in *Karr,* 924 F.2d at 1024, stated:

Although the Commissioner presented no expert witnesses, the record contains substantial evidence from which one may conclude that POGA's Koppelman process activity lacked economic substance and had no business purpose other than the creation of tax benefits. The offering memorandum emphasized the tax benefits of the partnership, including anticipated tax write-offs for the limited partners of four times their cash investment over the first four years of the partnership. The purchasers of partnership units did not negotiate for the price of their shares and knew of conflicting business interests.[7] POGA held no tangible assets, and the limited rights to exploit the Koppelman process that POGA did possess were difficult to value. Moreover, the fees paid by POGA to Sci-Teck and FTRD were not the result of arm's-length negotiations.

The amount and structure of the fees paid by the partnerships also lend support to the Tax Court's conclusion that the transactions lacked economic substance. POGA and SFA incurred a fixed obligation to pay an amount potentially 56 to 112 times greater than the price paid by Ronodo; yet, the partnerships received fewer rights than did Ronodo to exploit the Koppelman process. Another noteworthy difference between Ronodo's payments to Koppelman and POGA's payments to Ronodo is that Ronodo's payments were contingent on the completion and testing of the system's construction and on the commercial success of the Koppelman process technology and exploitation. In contrast, POGA's payments to Sci-Teck and FTRD were based on a multiple of the number of partnership units sold. Furthermore, the bulk of POGA's payment consisted of promissory notes due in twenty-five years. Although they were recourse notes, the Tax

Court found that the substantive liability that they represented was significantly less than the face amount of the notes.

---

[7] For example, Basile's personal interests conflicted with the interests of POGA and SFA. Basile was President and Chief Executive Officer of Genoco Industries, Inc. (Genoco), and a promoter of Petrogene Oil and Gas Associates (Petrogene). The partnership memorandum warned that Genoco would engage in oil and gas activities similar to those engaged in by FTOG, and that Genoco planned to convert bagasse into synthetic fuel. Basile had a proprietary interest in Petro-Syn, Sci-Teck, Ronodo, Genoco, and Petrogene, all entities which stood to profit at the expense of the partnerships.

The Court of Appeals for the Eleventh Circuit also affirmed our use of the testimony of Michael Zukerman (Zukerman), an attorney involved in structuring the transactions.

The majority of the Court of Appeals for the Sixth Circuit, in contrast, differed in its interpretation of Zukerman's testimony. *Smith v. Commissioner,* 937 F.2d at 1094. After analyzing that testimony and other evidence in the record, the court concluded that, "On the basis of the evidence presented, it seems obvious to us that the investment was not a sham." *Id.* at 1096.

Circuit Judge Charles W. Joiner, dissenting in *Smith,* discussed at length the application of regulations under section 183 and concluded:

It was perfectly apparent to purchasers of partnership units that the partnerships dealt only with corporations controlled by the promoters, that none of the web of commitments of the partnership had been negotiated at arms' length, that the principals and contractors to the partnership had no experience in relevant endeavors, and other facts communicating the insubstantial nature of the enterprise. These partnerships were not business ventures, they were paper montages of likely Tax Court arguments.

It does not controvert the significance of the other facts at issue to say that the income from the oil and gas activities of the partnership might have covered the expenses of the Koppelman process activities. It may be that the Koppelman process itself is commercially feasible. However, as the Tax Court clearly pointed out, it was the structure of this venture, the conflicts of interest, and other factors separate from the economic viability of the processes at issue, which demonstrate that the investors had no profit motive. The experts offered by the taxpayers who found the oil and gas projections reasonable, addressed merely the surface question of the economic potential of the partnerships' activities. However, there was no serious intent to pursue those activities, and the purchasers of the partnership units, to whom the partnerships were marketed as tax-oriented investments, had no expectation that the partnerships would be commer-

cially successful. The principals of this venture had no incentive to make it a success, the venture had inadequate funding to make it a success, and there is no evidence of attempts to make the venture a success after the failure of the activities originally planned, despite the fact that the partners had an obligation to fund the partnerships for the next twenty years. Viewing the above circumstances as a whole, I would affirm the Tax Court's finding that there was no profit motive under section 183, and that SFA was engaged in a sham transaction rather than a "trade or business" entitling it to deductions under section 174.

[*Smith v. Commissioner,* 937 F.2d at 1102-1103.]

Obviously, this is a case where judges disagree in their interpretation of the facts. The unanimous opinion of the Court of Appeals for the Eleventh Circuit and the dissenting judge sitting on the Court of Appeals for the Sixth Circuit agreed with us. Judge Joiner's dissenting opinion concisely states our position.

We have given consideration to the reasoning of the Court of Appeals for the Sixth Circuit. We believe that the majority opinion failed to differentiate between the potential economic benefits that might be realized by persons other than the partners and the losses certain to be realized by the taxpayers before the Court. With due respect to their opinion, and in view of the support for our position from the Court of Appeals for the Eleventh Circuit and from the dissent in *Smith,* we respectfully conclude that our original result was correct. Cf. *Bayer v. Commissioner,* 98 T.C. 19, 22-23 (1992). Petitioners have not included in their briefs any new or additional argument that must be addressed. Accordingly,

*Decisions will be entered under Rule 155.*

Reviewed by the Court.

SHIELDS, CLAPP, SWIFT, JACOBS, WRIGHT, PARR, COLVIN, HALPERN, BEGHE, CHIECHI, and LARO, *JJ.,* agree with the majority opinion.

HAMBLEN and PARKER, *JJ.,* concur in the result only.

---

SWIFT, *J.,* concurring: Neither of the two U.S. Courts of Appeals that have already analyzed the precise investment herein, nor any of the other Courts of Appeals, have adopted and applied the "unified" generic tax shelter test of *Rose v. Commissioner,* 88 T.C. 386 (1987), affd. 868 F.2d 851 (6th

Cir. 1989).[1] Even the majority's opinion in this case indicates that "in the future", majority op. p. 276, the Tax Court may decide not to follow the unified generic tax shelter test of *Rose.*

I would make that decision now. I would no longer follow *Rose,* and I would conclude that the test that should be utilized to evaluate the profit-objective element of passive tax-sheltered investments is the "actual and honest" profit-objective test reflected in so many of our recent opinions. As discussed below, I believe a "primary" profit-objective test, as suggested by Judge Ruwe in his concurring opinion—that is not found in the relevant statutory or regulatory scheme, that is in my opinion contrary to commercial and financial reality, and that has been utilized by the Supreme Court only in the context of evaluating whether an activity is in the nature of a hobby activity as distinguished from a trade or business activity—is too strict.

Over the years, in the context of analyzing passive, tax-sheltered investments, the courts have not been consistent in the language used to describe the quantity or level of profit objective that must be established: (1) Under section 183; (2) under the profit-objective aspect of the sham-transaction doctrine; and (3) under the profit-objective aspect of the economic-substance doctrine. The inconsistent profit-objective language that has been used has included, among other language, the following: "Basic", "dominant", "primary", "predominant", "substantial", "reasonable", "bona fide", and "actual and honest". As one court commented, we have been "glutted with tests. Many such tests proliferate because they give the comforting illusion of consistency and precision. They often obscure rather than clarify." *Collins v. Commissioner,* 857 F.2d 1383, 1386 (9th Cir. 1988), affg. *Dister v. Commissioner,* T.C. Memo. 1987-217.

Some courts have used different, inconsistent language in the same opinion. For example, one recent opinion suggested that investors have to establish that they had a "dominant"

---

[1] See *Nickeson v. Commissioner,* 962 F.2d 973, 976 (10th Cir. 1992), affg. *Brock v. Commissioner,* T.C. Memo. 1989-641; *Hunt v. Commissioner,* 938 F.2d 466, 471 n.5 (4th Cir. 1991), affg. T.C. Memo. 1989-660; *Smith v. Commissioner,* 937 F.2d 1089 (6th Cir. 1991); revg. 91 T.C. 733 (1988); *Karr v. Commissioner,* 924 F.2d 1018, 1023 (11th Cir. 1991), affg. *Smith v. Commissioner,* 91 T.C. 733 (1988); *Rose v. Commissioner,* 868 F.2d 851, 853 (6th Cir. 1989), affg. 88 T.C. 386 (1987) (Court reviewed); *Collins v. Commissioner,* 857 F.2d 1383, 1386 (9th Cir. 1988), affg. *Dister v. Commissioner,* T.C. Memo. 1987-217.

profit objective, but also that "the determination crucial to the instant case [was] whether the taxpayers had an actual and honest profit objective." *Nickeson v. Commissioner,* 962 F.2d 973, 976 (10th Cir. 1992), affg. *Brock v. Commissioner,* T.C. Memo. 1989-641. Another opinion suggested that investors must show a "primary" profit objective, but then suggested that the test for sham-transaction purposes was whether "the transaction has *any* practicable economic effects other than" tax benefits. *Bryant v. Commissioner,* 928 F.2d 745, 748 (6th Cir. 1991) (emphasis added), affg. in part, revg. in part and remanding T.C. Memo. 1989-527.

The Tax Court, however, in the last 5 years and with few exceptions—in evaluating passive, tax-sheltered investments and in an attempt to bring some uniformity to the language and the analysis associated with the determination of profit objective—has consistently stated the test relating to profit objective to be whether the investors had an "actual and honest" profit objective (or whether the investors had a "bona fide", "good faith", or "any" profit objective—language, in my opinion, synonymous with "actual and honest"). Generally, no particular attempt has been made by the Tax Court to quantify the *amount* of profit objective required (i.e., to disallow claimed tax benefits where the investors' profit objective was actual and honest but not primary).

According to my research, in over 123 of the 131 Tax Court division and memorandum opinions issued since 1987 in which profit objective was at issue in the context of passive, tax-sheltered investments, we applied the "actual and honest" profit-objective test, or a synonymous test, in evaluating whether passive investors had the requisite profit objective. See, e.g., *Krause v. Commissioner,* 99 T.C. 132 (1992); *Marine v. Commissioner,* 92 T.C. 958 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991); *McCrary v. Commissioner,* 92 T.C. 827 (1989); *Levy v. Commissioner,* 91 T.C. 838 (1988); *Antonides v. Commissioner,* 91 T.C. 686 (1988), affd. 893 F.2d 656 (4th Cir. 1990); *Soriano v. Commissioner,* 90 T.C. 44 (1988); *Fielding v. Commissioner,* T.C. Memo. 1992-553; *Universal Research and Dev. Partnership No. 1 v. Commissioner,* T.C. Memo. 1991-437; *Schwartz v. Commissioner,* T.C. Memo. 1991-380; *Berry v. Commissioner,* T.C. Memo. 1991-145; *Charlton v. Commissioner,* T.C. Memo. 1990-402; *Bukove v. Commissioner,* T.C. Memo. 1989-588;

*Golden v. Commissioner,* T.C. Memo. 1989-514; *Keenan v. Commissioner,* T.C. Memo. 1989-300; *Brown v. Commissioner,* T.C. Memo. 1988-527.

The U.S. Courts of Appeals have been less consistent. Nearly every circuit, however, in at least one opinion, has utilized the "actual and honest" profit objective test (or a synonymous nonquantitative test) without any reference to a "primary" or "dominant" profit objective requirement. See, for example—

1st Circuit:
*Estate of Power v. Commissioner,* 736 F.2d 826 (1st Cir. 1984), affg. T.C. Memo. 1983-552

2d Circuit:
*Schley v. Commissioner,* 375 F.2d 747 (2d Cir. 1967), affg. T.C. Memo. 1965-111

3d Circuit:
*Weir v. Commissioner,* 109 F.2d 996 (3d Cir. 1940), affg. in part and revg. in part 39 B.T.A. 400 (1939)

4th Circuit:
*Faulconer v. Commissioner,* 748 F.2d 890 (4th Cir. 1984), revg. and remanding T.C. Memo. 1983-165; *Malmstedt v. Commissioner,* 578 F.2d 520, 527 (4th Cir. 1978), revg. T.C. Memo. 1976-46

6th Circuit:
*Smith v. Commissioner,* 937 F.2d 1089 (6th Cir. 1991), revg. 91 T.C. 733 (1988); *Campbell v. Commissioner,* 868 F.2d 833 (6th Cir. 1989), affg. in part, revg. in part and remanding T.C. Memo. 1986-569

7th Circuit:
*Burger v. Commissioner,* 809 F.2d 355 (7th Cir. 1987), affg. T.C. Memo. 1985-523; *Glimco v. Commissioner,* 397 F.2d 537, 540 (7th Cir. 1968), affg. T.C. Memo. 1967-119

8th Circuit:
*Evans v. Commissioner,* 908 F.2d 369 (8th Cir. 1990), revg. T.C. Memo. 1988-468

9th Circuit:
*Hillendahl v. Commissioner,* 976 F.2d 737 (9th Cir. 1992), affg. without published opinion *Noonan v. Commissioner,* T.C. Memo. 1986-449; *Sochin v. Commissioner,* 843 F.2d 351

(9th Cir. 1988), affg. *Brown v. Commissioner,* 85 T.C. 968 (1985)

10th Circuit:
*Clark v. Commissioner,* 951 F.2d 1258 (10th Cir. 1991), affg. without published opinion T.C. Memo. 1989-598

D.C. Circuit:
*Cornfeld v. Commissioner,* 797 F.2d 1049 (D.C. Cir. 1986), revg. and remanding T.C. Memo. 1984-105; *Dreicer v. Commissioner,* 665 F.2d 1292 (D.C. Cir. 1981), revg. and remanding T.C. Memo. 1979-395

I submit that the "primary" profit-objective test suggested by Judge Ruwe ignores the commercial and business reality that the tax laws affect the shape of most business transactions. *Frank Lyon Co. v. United States,* 435 U.S. 561, 580 (1978). The underlying activity on which a passive, tax-sheltered investment is typically structured generally constitutes an activity that carries with it (assuming it is not a sham) significant tax benefits. The availability of the tax benefits, or tax shelter, is often the reason the particular activity (e.g., equipment leasing) is selected in preference to an activity that does not carry with it significant tax benefits (e.g., undeveloped land). The presence, therefore, of significant tax benefits (that may even represent the investor's primary objective for entering into the transaction) should not result in the loss of the associated tax benefits *if the investor, in fact, has an actual and honest profit objective* apart from the tax benefits (and assuming the transaction is not a sham).

We have expressly recognized the above proposition in a number of situations where Congress has made available particular tax benefits with the specific intent of providing investors special incentives to enter into investments that they might not otherwise enter into. See, e.g., *Levy v. Commissioner,* 91 T.C. 838, 853, 871-872 (1988); *Friendship Dairies, Inc. v. Commissioner,* 90 T.C. 1054, 1064 (1988); *Estate of Thomas v. Commissioner,* 84 T.C. 412, 432 (1985); *Fox v. Commissioner,* 82 T.C. 1001, 1021 (1984).

Respondent's own "bible" on leveraged equipment-leasing transactions recognizes this proposition and requires only a nominal profit objective. See Rev. Proc. 75-21, 1975-1 C.B. 715, 716; see also Macan & Umbrecht, "Tax Aspects of

Equipment Leasing", in Equipment Leasing-Leveraged Leasing 313, 430-436 (Fritch et al. eds., 3d ed. 1988).

Similarly, in the instant case, which involves research and development activities, by enactment of section 174 and by making available certain tax benefits thereunder, Congress sought to "stimulate the search for new products and new inventions upon which the future economic and military strength of our Nation depends." *Snow v. Commissioner,* 416 U.S. 500, 503 (1974). In reversing our opinion in *Smith v. Commissioner,* 937 F.2d 1089 (6th Cir. 1991), the Court of Appeals for the Sixth Circuit explicitly recognized that the exact same investment activity as the activity at issue in the instant case is a tax-favored investment under section 174, as follows:

> *Snow* made it clear that "[s]ection 174 was enacted in 1954 to dilute some of the conception of 'ordinary and necessary' business expenses under section 162(a)." * * * We deem the kind of enterprise to develop the Koppelman process and K-Fuel reactors as a type of *"small"* and "upcoming" partnership enterprise encouraged in *Snow.* [*Smith v. Commissioner,* 937 F.2d 1089, 1097-1098 (6th Cir. 1991); citations omitted.]

See also *Diamond v. Commissioner,* 930 F.2d 372, 374 (4th Cir. 1991), affg. 92 T.C. 423 (1989); *Green v. Commissioner,* 83 T.C. 667, 686 (1984).

Judge Ruwe's concurring opinion cites the Supreme Court's opinion in *Commissioner v. Groetzinger,* 480 U.S. 23 (1987), as support for his suggestion that we should require taxpayers to prove a "primary" profit objective in analyzing the allowability of tax benefits associated with passive, tax-sheltered investments. In *Commissioner v. Groetzinger, supra* at 35, the Supreme Court utilized a "primary" profit-objective test to ascertain whether a taxpayer was engaged in the active conduct of a gambling trade or business activity or whether the taxpayer's gambling activity was merely a hobby. As stated by the Supreme Court, "the taxpayer's primary purpose for engaging in the activity must be for income or for profit. A sporadic activity, a hobby, or an amusement diversion does not qualify." *Id.*[2]

---

[2] It has been noted that "The primary standard first appeared as a judicial gloss on the statutory language of section 165(c)(2) in *Helvering v. National Grocery Co.,* 304 U.S. 282 (1938), * * * [a] case unrelated to section 165(c)(2) and the reference to section 23(e) (predecessor to section 165(c)(2)) was made in order to support the proposition that 'The instances are many in which purpose or state of mind determines the incidence of an income tax'." *Fox v. Commis-*

The hobby-loss issue in *Groetzinger* is distinguishable from issues arising in the context of tax-sheltered investments, and as suggested in *Snyder v. United States,* 674 F.2d 1359, 1363 (10th Cir. 1982), the primary profit-objective test should only apply when distinguishing between a hobby and a trade or business activity. See also *Carkhuff v. Commissioner,* 425 F.2d 1400, 1404 (6th Cir. 1970), affg. T.C. Memo. 1969-66; *Schley v. Commissioner, supra* at 750. As noted in *Johnson v. United States,* 11 Cl. Ct. 17, 27 (1986), "the predominant profit motive cases under section 162 have importance only in the 'hobby loss' context, and do not control in a business situation" and a primary profit-objective test is not supported by relevant statutory language or legislative history.

Continuing, the Claims Court explained—

Economic and tax motives regularly operate side by side to influence business transactions, and it would be unfair and contrary to the realities of the marketplace to apply a "primary or dominant" test to them. * * * [*Johnson v. United States,* 11 Cl.Ct. at 27.]

As observed by the Court of Appeals for the Fourth Circuit in *Faulconer v. Commissioner,* 748 F.2d 890, 895-896 n.10 (4th Cir. 1984), neither section 183 nor the regulations thereunder require a "primary" or "dominant" profit objective. All that is required is "a profit" objective.

In summary, in my opinion, Judge Ruwe's suggested "primary" profit-objective test should not apply in this case (involving tax benefits claimed under section 174), and such a test should not apply generally to typical passive, tax-sheltered investments that are structured largely on the basis of the extensive tax benefits that Congress has made available.

If a tax-sheltered investment is a sham, if it has no economic substance, if the investor had no actual and honest profit objective, or so negligible a profit objective that it should be ignored, let the courts so find, and let the courts reject the claimed tax benefits. But I would spare us, other courts, the IRS, and the tax bar, the task of evaluating whether, for example, a $5,000 before-tax profit when com-

---

sioner, 82 T.C. 1001, 1018 (1984) (citations omitted); see also *Dewees v. Commissioner,* 870 F.2d 21, 33 (1st Cir. 1989), affg. *Glass v. Commissioner,* 87 T.C. 1087 (1986); *Miller v. Commissioner,* 84 T.C. 827, 851-852 (1985) (Simpson, J., dissenting), revd. 836 F.2d 1274 (10th Cir. 1988); *Thurner v. Commissioner,* T.C. Memo. 1990-529.

pared to $20,000 of tax benefits provides a sufficient nontax profit for one investor but not for another.

WELLS and WHALEN, *JJ.*, agree with this concurring opinion.

---

RUWE, *J.*, concurring: I agree with the result reached by the majority; however, because the Court of Appeals for the Sixth Circuit reversed our holding in *Smith v. Commissioner*, 91 T.C. 733 (1988), revd. 937 F.2d 1089 (6th Cir. 1991), and disagreed with our "generic tax shelter analysis", I wish to express my views on the utility of continuing to use that analysis and on the profit-objective requirement of section 183.

### The Generic Tax Shelter Analysis

The generic tax shelter analysis was first articulated in *Rose v. Commissioner*, 88 T.C. 386 (1987), affd. 868 F.2d 851 (6th Cir. 1989). It attempted to combine the test for determining whether there was a profit objective with the test for determining whether a transaction had economic substance. The goals of the unified test were to "emphasize objective factors", "not require weighing the objective facts against a taxpayer's statement of his intent," "be more understandable to taxpayers who doubt our ability to determine their subjective state of mind", and treat similarly situated taxpayers the same. *Rose v. Commissioner*, 88 T.C. at 414.

While these goals were laudable, a close look at the analysis in *Rose* leads me to the conclusion that the unified approach required findings with respect to the same subjective and objective factors that the separate tests required.[1] That being the case, the results produced by the unified analysis will be the same as those produced by the separate

---

[1] In *Rose v. Commissioner*, 88 T.C. 386 (1987), affd. 868 F.2d 851 (6th Cir. 1989), we found that the taxpayers did not have an actual and honest profit objective. 88 T.C. at 405, 415. This finding alone would have been dispositive of the deductions and credits to which the unified generic tax shelter analysis was applied. We went on to find that there was no reasonable possibility that the transactions in issue would generate sales sufficient to recoup the taxpayer's investment in order to produce a profit and that the transactions lacked economic substance. *Id.* at 405. This second finding would have independently led to the conclusion that the activities in question should not be recognized for tax purposes even if the taxpayer had a profit objective. See *Cherin v. Commissioner*, 89 T.C. 986 (1987); *James v. Commissioner*, 87 T.C. 905, 924 (1986), affd. 899 F.2d 905 (10th Cir. 1990).

tests. However, since many tax shelter-type cases can be totally disposed of by using *either* the subjective profit objective test, see *Hayden v. Commissioner,* 889 F.2d 1548 (6th Cir. 1989), affg. T.C. Memo. 1988-310; *Thomas v. Commissioner,* 792 F.2d 1256 (4th Cir. 1986), affg. 84 T.C. 1244 (1985); *Seaman v. Commissioner,* 84 T.C. 564 (1985), *or* the economic substance test, see *Illes v. Commissioner,* 982 F.2d 163 (6th Cir. 1992);[2] *Cherin v. Commissioner,* 89 T.C. 986 (1987);[3] *James v. Commissioner,* 87 T.C. 905 (1986), affd. 899 F.2d 905 (10th Cir. 1990), there is no apparent benefit to be gained by continuing to apply a unified approach requiring both tests.

The unified approach, if properly used, does not lead to erroneous results. See *Collins v. Commissioner,* 857 F.2d 1383, 1386 (9th Cir. 1988), affg. T.C. Memo. 1987-217. However, there has been some misunderstanding of what we intended. For example, the Court of Appeals for the Sixth Circuit in *Smith v. Commissioner,* 937 F.2d 1089 (6th Cir. 1991), concluded that we had used a profit-motive test that focused on whether the taxpayer's subjective expectation of profit was "reasonable" rather than focusing on whether the profit objective was actual and honest. This was not our intention, see majority op. pp. 275-276. Nevertheless, because the unified approach has been misunderstood, has been rejected by several Courts of Appeals,[4] and is not particularly helpful, I would discontinue using it.

### The Profit-Objective Test

The Court of Appeals for the Sixth Circuit in *Smith* believed that we were clearly erroneous in finding that there was no actual and honest profit objective.

---

[2] In *Illes v. Commissioner,* 982 F.2d 163, 165 (6th Cir. 1992), the court stated: "If the transaction lacks economic substance, then the deduction must be disallowed without regard to the 'niceties' of the taxpayer's intent." (Citations omitted.)

[3] In *Cherin v. Commissioner, supra* at 994, we stated:

Subjective intent cannot supply economic substance to a business transaction. Where, as in the case at bar, we examine the transaction and conclude as we do in this case that Southern Star's herd investment packages lack any realistic potential for profit, we need not examine the investor's state of mind. This analysis, where it can be used, avoids the difficult task of weighing dual motives, such as we were forced to undertake in *Fox v. Commissioner,* 82 T.C. 1001 (1984). * * *

[4] See *Hunt v. Commissioner,* 938 F.2d 466 (4th Cir. 1991), affg. T.C. Memo. 1989-660; *Smith v. Commissioner,* 937 F.2d 1089 (6th Cir. 1991), revg. 91 T.C. 733 (1988); *Rose v. Commissioner,* 868 F.2d 851 (6th Cir. 1989), affg. 88 T.C. 386 (1987); see also *Collins v. Commissioner,* 857 F.2d 1383, 1386 (9th Cir. 1988), affg. T.C. Memo. 1987-217.

We find it error to have concluded on the facts and record that the Smiths were motivated by *"no* business purposes" * * *. [*Smith v. Commissioner,* 937 F.2d at 1098-1099; emphasis in original.]

If our finding that the taxpayers had *no* profit objective was erroneous, our holding that the transaction was a sham under the unified generic tax shelter test would have been error. See *McCrary v. Commissioner,* 92 T.C. 827, 845 (1989).[5] However, the mere existence of *a* profit objective will not necessarily result in the allowance of deductions. A taxpayer still must meet the separate subjective test inherent in sections 162 and 183 requiring that the taxpayer's *primary* purpose for engaging in the activity was to make a profit. See *Cato v. Commissioner,* 99 T.C. 633, 646 (1992).[6]

The requirement that the activity be engaged in *primarily* for profit is the test used by the Court of Appeals for the Sixth Circuit. *Hayden v. Commissioner,* 889 F.2d 1548, 1552 (6th Cir. 1989), affg. T.C. Memo. 1988-310. In *Bryant v. Commissioner,* 928 F.2d 745, 748 (6th Cir. 1991), affg. in part and revg. in part T.C. Memo. 1989-527, the court stated:

A taxpayer may deduct development costs only if the primary objective of the mining venture was to make a profit. *Collins v. Commissioner,* 857 F.2d 1383, 1385 (9th Cir. 1988); sec. 183. However, the court shall not inquire into a transaction's primary objective until it determines that the transaction is not a sham. *Collins,* 857 F.2d at 1385; *Rose v. Commissioner,* 868 F.2d 851, 853 (6th Cir. 1989).

In *Bryant,* as in *Smith,* the Court of Appeals reversed the Tax Court's finding that the mining venture was a sham without economic substance. In *Bryant,* the Court of Appeals remanded the case to the Tax Court for a finding of whether the requisite profit objective was present. However, in *Smith,* the Court of Appeals did not remand the case in order for us to determine whether the requisite profit objective was present, nor did it make an independent finding that profit was the taxpayers' *primary* objective.[7]

---

[5] "A transaction that has *a* business purpose or profit objective will survive the *Rose* analysis of economic substance." *McCrary v. Commissioner,* 92 T.C. 827, 845 (1989) (emphasis added).

[6] If we were correct in *Smith v. Commissioner,* 91 T.C. 733 (1988), revd. 937 F.2d 1089 (6th Cir. 1991), in finding that there was *no* profit objective, it was not necessary to determine whether profit was the "primary" objective. See *Estate of Baron v. Commissioner,* 798 F.2d 65, 72 (2d Cir. 1986), affg. 83 T.C. 542 (1984). However, the often-stated requirement that there be an "actual and honest profit objective" does not replace the requirement that profit be the "primary purpose" for engaging in the activity.

[7] The two-judge majority in the Court of Appeals in *Smith* acknowledged that whether the taxpayers had *any* profit objective was a close question and noted that four of the six appellate

The distinction between finding that the taxpayers had *a* profit objective and finding that profit was their *primary* objective cannot be dismissed as mere semantics. Section 183 provides that, except as otherwise allowed in that section, no deduction is allowable that is attributable to an activity which is "not engaged in for profit".[8] Section 183(c) states that the term "activity not engaged in for profit" should be defined by standards used in sections 162 and 212. The profit standards applicable to section 212 are the same as those used in section 162. See *Agro Science Co. v. Commissioner*, 934 F.2d 573 (5th Cir. 1991), affg. T.C. Memo. 1989-687; *Antonides v. Commissioner*, 893 F.2d 656 (4th Cir. 1990), affg. 91 T.C. 686 (1988). In order for expenses to be deductible under section 162, the activity in which they are incurred must meet the profit-objective standard necessary to be a "trade or business" within the meaning of section 162. As explained by the Supreme Court:

Section 162(a) provides a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Although the statute does not expressly require that a "trade or business" must be carried on with an intent to profit, this Court has ruled that a taxpayer's activities fall within the scope of §162 only if an intent to profit has been shown. See *Commissioner v. Groetzinger*, 480 U.S. 23, 35 (1987) * * * [*Portland Golf Club v. Commissioner*, 497 U.S. 154, 164 (1990).]

In *Commissioner v. Groetzinger*, 480 U.S. 23 (1987), the Supreme Court made clear that in order for a taxpayer to be in a trade or business, within the meaning of section 162, the "primary purpose" for engaging in the activity must be for profit. The Supreme Court stated:

the taxpayer must be involved in the activity with continuity and regularity and * * * the taxpayer's primary purpose for engaging in the activity must be for income or profit. * * * [*Commissioner v. Groetzinger*, 480 U.S. at 35.[9]]

---

court judges who reviewed the facts agreed with the trial judge that the taxpayers had *no* profit objective. *Smith v. Commissioner*, 937 F.2d at 1089. While the majority in *Smith* found that there was *a* profit objective, they did not decide whether the taxpayers had proven the more difficult requirement; i.e., that profit was their *primary* objective.

[8] One of the reasons for respondent's disallowance of the deductions in the instant case, and in *Smith*, was that the partnerships' involvement in the Koppelman process was an activity not engaged in for profit.

[9] Prior to *Commissioner v. Groetzinger*, 480 U.S. 23 (1987), the Supreme Court described the profit-motive requirement in the following words:

Accord *Portland Golf Club v. Commissioner, supra.*

Even before *Groetzinger* was decided, the Tax Court had held that deductibility under section 162 required that the taxpayer's "primary purpose" for engaging in the activity be for profit.

In order to find that the partnership's coal venture constituted the carrying on of a trade or business, we must first find that the partnership engaged in the activity with the primary and predominant purpose and objective of making a profit. *Brannen v. Commissioner,* 722 F.2d 695, 704 (11th Cir. 1984), affg. 78 T.C. 471 (1982); *Ramsay v. Commissioner, supra* at 810; *Surloff v. Commissioner, supra* at 232-233. As used in this context, "primary" means "of first importance" or "principally," and "profit" means economic profit, independent of tax savings. *Surloff v. Commissioner, supra* at 233. While a reasonable expectation is not required, the profit objective must be bona fide. *Fox v. Commissioner,* 80 T.C. 972, 1006 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub nom. *Barnard v. Commissioner,* 731 F.2d 230 (4th Cir. 1984), affd. without published opinion sub nom. *Krasta v. Commissioner,* 734 F.2d 6 (3d Cir. 1984), affd. without published opinion sub nom. *Hook v. Commissioner,* 734 F.2d 5 (3d Cir. 1984). [*Seaman v. Commissioner,* 84 T.C. 564, 588 (1985).[10]]

Accord *Thomas v. Commissioner,* 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986).

This same requirement has been described by the Court of Appeals for the Sixth Circuit in the following terms:

The threshold inquiry in determining whether an activity is a trade or business or is carried on for the production of income is whether the activity is engaged in for the primary purpose and dominant hope and intent of realizing a profit. *Godfrey v. Commissioner,* 335 F.2d 82, 84 (6th Cir. 1964), *cert. denied,* 379 U.S. 966, 85 S.Ct. 660, 13 L.Ed.2d 560 (1965). In this context, "profit" means economic profit, independent of tax savings. *Campbell,* 868 F.2d at 836. The burden of proving the requisite profit

---

Section 162 permits a taxpayer to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Undoubtedly due to the desirability of tax deductions, §162 has spawned a rich and voluminous jurisprudence. The standard test for the existence of a trade or business for purposes of §162 is whether the activity "was entered into with the *dominant* hope and intent of realizing a profit." *Brannen v. Commissioner,* 722 F.2d 695, 704 (CA11 1984). * * * [*United States v. American Bar Endowment,* 477 U.S. 105, 110 n.1 (1986); emphasis added.]

[10] In *Levy v. Commissioner,* 91 T.C. 838, 871 (1988), we stated that the existence of an "actual and honest profit objective" was sufficient and that the taxpayer need not show that profit was the primary purpose for the activity. *Levy* does not purport to overrule the "primary purpose" test adopted by the Tax Court, nor does it discuss or attempt to reconcile the opinions of the Supreme Court, Circuit Courts, and this Court dealing with the "primary purpose" test. It appears that the statement in *Levy* regarding the profit-objective requirement was intended to be limited to the unique circumstances of that case. See *Levy v. Commissioner, supra* at 871, 872. We have recognized that there are certain situations where deductions and credits are congressionally authorized even though profit is not the primary purpose for engaging in the activity. See *Fox v. Commissioner,* 82 T.C. 1001, 1021 (1984).

motive is on the taxpayer. Rules of Practice and Procedure of the United States Tax Court, Rule 142(a) (Jan. 1, 1984). A finding regarding a taxpayer's motivation is purely one of fact, and as such may not be disturbed on appeal unless shown to be clearly erroneous. * * * [*Hayden v. Commissioner*, 889 F.2d 1548, 1552 (6th Cir. 1989), affg. T.C. Memo. 1988-310; fn. ref. omitted.[11]]

"Primary" means first; principal; chief; leading; and first in rank or importance. Black's Law Dictionary 1190 (6th ed. 1990); Webster's Third New International Dictionary (1971), and we have previously held that "primary" means "of first importance" or "principally". *Fox v. Commissioner*, 82 T.C. 1001, 1022 (1984), *Seaman v. Commissioner, supra* at 588; *Thomas v. Commissioner, supra* at 1269; see *Malat v. Riddell*, 383 U.S. 569, 572 (1966); *Surloff v. Commissioner*, 81 T.C. 210, 233 (1983). If two or more objectives or purposes motivated a taxpayer to engage in an activity,. courts must determine which one was "primary". Thus, if a taxpayer was motivated by both profit *and* tax objectives, we must determine if profit was the "primary" objective. *Seaman v. Commissioner, supra* at 588, 590;[12] see *Estate of Baron v. Commissioner*, 83 T.C. 542, 558 (1984), affd. 798 F.2d 65 (2d Cir. 1986); cf. *Commissioner v. Soliman*, 506 U.S. ____, 113 S. Ct. 701, 702 (1993) (determining whether an office in a taxpayer's home qualifies as his "principal" place of business requires a comparative analysis of the various business locations used by the taxpayer).

In applying the appropriate profit-motive standard, it must be recognized that tax considerations play a part in most, if not all, business decisions. Comparison of a taxpayer's profit motive with other motives will sometimes be difficult. At times, it will be necessary to reconcile the profit-motive requirement with statutory tax incentives intended to pro-

---

[11] Most of the Courts of Appeals have expressly held that the primary or dominant purpose for engaging in the activity must be for profit. *Simon v. Commissioner*, 830 F.2d 449, 500 (3d Cir. 1987); *Antonides v. Commissioner*, 893 F.2d 656, 659 (4th Cir. 1990); *Agro Science Co. v. Commissioner*, 934 F.2d 573, 576 (5th Cir. 1991); *Bryant v. Commissioner*, 928 F.2d 745, 749 (6th Cir. 1991); *Nickerson v. Commissioner*, 700 F.2d 402, 404 (7th Cir. 1983); *Vorsheck v. Commissioner*, 933 F.2d 757, 758 (9th Cir. 1991); *Nickeson v. Commissioner*, 962 F.2d 973, 976 (10th Cir. 1992); *Brannen v. Commissioner*, 722 F.2d 695, 704 (11th Cir. 1984).

[12] In *Seaman v. Commissioner*, 84 T.C. 564, 590 (1985), we stated:

Petitioners contend that the partnership is permitted to take advantage of tax deductions provided by law without destroying the validity of its profit objective. Of course, in so contending, petitioners miss the mark. The point is that the actions of the general partners, in elevating the importance of securing tax advantages over the importance of investigating the economic viability of the venture, belie a primary economic profit objective.

mote certain types of activities. We have recognized that there are certain situations where deductions and credits are congressionally authorized even though an economic profit, independent of tax considerations, is not the primary objective. *Fox v. Commissioner, supra* at 1021. However, the deductions in the instant case do not fall within such an exception. It is true that some of the partnership deductions were for research and development expenditures, and that Congress provided some relief for research and development expenses in section 174 by allowing such expenses to be deducted if incurred "in connection with" a trade or business. That relief simply allowed deductions to be taken before the commencement of the trade or business operations as opposed to the normal section 162 requirement that deductions be limited to expenses incurred "in carrying on" a trade or business. See *Snow v. Commissioner,* 416 U.S. 500 (1974); *Zink v. United States,* 929 F.2d 1015 (5th Cir. 1991). Section 174 provided no relief from the requirement that the taxpayer must be engaged in a trade or business at some time, see *Green v. Commissioner,* 83 T.C. 667 (1984), nor did it provide relief from the requirement that in order to be a trade or business, the "primary" objective for engaging in the activity must be for profit. *Nickeson v. Commissioner,* 962 F.2d 973, 976 (10th Cir. 1992); *Agro Science Co. v. Commissioner,* 934 F.2d 573, 576 (5th Cir. 1991), affg. T.C. Memo. 1989-687.[13]

The generic tax shelter analysis used by us in *Smith v. Commissioner, supra,* did not require us to determine whether the taxpayers engaged in the activity with the *primary* purpose of making a profit. However, based on our opinion in *Smith* and the majority opinion in this case, it is clear tht Judge Cohen believed that profit was not the primary objective. In reversing our holding in *Smith,* the Court of Appeals for the Sixth Circuit did not find that the taxpayers engaged in their Koppelman-process activities with

---

[13] Congress allows deductions under 26 U.S.C. sec. 162 for expenses of carrying on activities that constitute a taxpayer's trade or business, under 26 U.S.C. sec. 174 for research and development expenses in connection with a trade or business, and under 26 U.S.C. sec. 212 for expenses incurred in connection with activities undertaken to produce or collect income. Expenditures may only be deducted under sections 162, 174, and 212 if the facts and circumstances indicate that the taxpayer made them primarily in furtherance of a bona fide profit objective independent of tax consequences. 26 C.F.R. sec. 1.183-2(a) (1990); *Mayrath v. Commissioner,* 357 F.2d 209, 214 (5th Cir. 1966); *Drobny v. Commissioner,* 86 T.C. 1326, 1340 (1986). [*Agro Science Co. v. Commissioner, supra* at 576.]

the *primary* objective of making a profit. Had that requirement been considered by the Court of Appeals, the result may well have been different. See *Thomas v. Commissioner,* 792 F.2d 1256, 1258, 1259 (4th Cir. 1986), affg. 84 T.C. 1244 (1985).[14]

Respondent disallowed deductions for both lack of economic substance *and* lack of the requisite profit objective. Petitioners cannot prevail by simply proving that the activity had economic substance and thay they had *a* profit objective. They must also prove that profit was their "primary" purpose for engaging in the activity. This they have not done.

CHABOT, JACOBS, GERBER, and PARR, *JJ.,* agree with this concurring opinion.

---

[14] In *Thomas v. Commissioner,* 792 F.2d 1256, 1258-1259 (4th Cir. 1986), affg. 84 T.C. 1244 (1985), the court explained that the determination of whether the activity was engaged in primarily for profit, is a test that is separate and apart from whether the transaction was a sham.

The taxpayers contend that the court should have applied the "sham transaction" test. * * *

We reject this argument. The Commissioner did not disallow the taxpayers' deductions on the ground that the program was a sham. Instead, the Commissioner asserted that the program lacked the primary objective of making a profit. These are different grounds for invalidating deductions. See Sanderson v. Commissioner, 1985 T.C.M. (P-H) ¶ 85,477 at 2140 n. 15. If a business has the primary objective of making a profit, deductions pertaining to a specific transaction may or may not be allowed depending on whether the transaction is a sham. See, e.g., Rice's Toyota World, 752 F.2d at 91-92. The issue in this case is more fundamental. It is whether the mining venture itself has the primary objective of making a profit.