T.C. Memo. 1996-347

UNITED STATES TAX COURT

DERWYN JOSEPH BOOKER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14110-87.                    Filed July 30, 1996.

Derwyn Joseph Booker, pro se.

<u>Julie M.T. Foster</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, <u>Judge</u>:  Respondent determined deficiencies in and
additions to petitioner's Federal income tax as follows:[1]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years at issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

| | | Additions to Tax | | |
| | | Sec. | Sec. | Sec. |
| Year[1] | Deficiency | 6653(a)(1) | 6653(a)(2) | 6659 |
| 1980 | $4,898.17 | $244.91 | [2] | $1,469.45 |
| 1981 | 5,791.00 | 289.55 | [2] | 1,737.30 |
| 1982 | 934.83 | 46.74 | [2] | -- |
| 1983 | 6,108.00 | 305.40 | [2] | 1,832.40 |

[1] Increased interest under sec. 6621(c) was imposed.
[2] 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence.

After concessions, the issues for decision are:

(1)  Whether petitioner is entitled to claimed deductions and a claimed investment tax credit for taxable year 1983 in connection with his participation in the Century Concepts, Inc., Master Video Game Leasing Program.  We hold that he is not.

(2)  Whether petitioner is liable for the negligence additions to tax under section 6653(a)(1) and (2) for the taxable years at issue.  We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.  The stipulation of facts and the attached exhibits are incorporated herein.  Petitioner resided in Corpus Christi, Texas, at the time the petition was filed in the instant case.

In 1983, petitioner participated in the Century Concepts, Inc. Master Video Game Leasing Program.  In 1983, Century Concepts, Inc. (Century Concepts or Century), was ostensibly in

the business of leasing master computer video games from which the lessee could reproduce copies and offer such copies for sale to retail establishments either directly or through a distributor. Century Concepts acquired low-quality master video games manufactured by General Masters Corp. of Los Angeles (General Masters) that were not designed for commercial use. Using promissory notes, Century acquired the masters at highly inflated values. Century then leased the masters to its "investors" for the sole purpose of allowing these individuals to, as its brochure explains, "benefit from large investment tax credits with a one time lease payment." Century elected to have the investment tax credit flow to its lessees. The investment tax credit is based upon the value of the equipment leased. Century assigned highly inflated values to the subject masters. The lessees are required to make a one-time payment upon entering into the lease transaction. The lessees then enter into an agreement with a distributor provided to them by Century for the alleged marketing of the video games.

Century's brochure, explaining the leasing of master video games, specifically states that Century Concepts was founded for the purpose of marketing tax-advantaged equipment leases to its investors. The brochure totals three pages discussing only in general terms the video game market. The brochure does not specifically address the master video games that Century intends to lease, their quality, nor any other facets of the program.

The brochure does, however, strongly emphasize the benefits to be derived from the investment tax credit.

Also included in Century's promotional materials was a "Legal Opinion" and a document entitled "Closing Documents". The "Legal Opinion" totals 16 pages and is entirely devoted to the tax consequences of entering into the Century Concepts leasing program including the tax benefits, possible challenge by the IRS, litigation, and the various Federal tax penalties that may be applicable. The "Closing Documents" totals 20 pages of which nine pages are devoted solely to tax considerations, one page discusses how to lease a master, five pages consist of sample tax forms, and the remainder consists of other sample forms and a table of contents. In the "Closing Documents" Century states that the fair market value of the masters equals $375,000 and goes on to mention that the "the total write-off [ratio] is approximately 4.9:1, based on the * * * [investment tax credit] and total business expense write-offs."

There is no meaningful analysis contained anywhere in the promotional materials of the potential nontax, economic profitability of the Century Concepts leasing program. Also, the materials are devoid of any information of substance regarding the marketability of the masters, or any information concerning how master video games can be marketed.

On December 20, 1983, petitioner entered into an equipment lease with Century Concepts for the lease of a master video game

called Techno Sport Toboggan. Petitioner entered into the lease transaction under the entity name B.B.B., Ltd. Petitioner had a 30-percent interest in the lease. The lease required an initial payment of $15,000; petitioner's portion totaled $4,500. Petitioner executed a promissory note in the amount of $4,500 for his participation under the lease agreement.

Also on December 20, 1983, petitioner entered into a Computer Program Employment Agreement (agreement) with ALA Enterprises, Inc. (ALA), providing for distribution of Techno Sport Toboggan. The agreement provided that ALA manufacture 500 copies of the video game for an advance payment of $3,900. Petitioner's share of that payment totaled $1,170.

On December 23, 1983, petitioner entered into an equipment lease with Century for the lease of a master video called Monsoon. Petitioner entered into the lease transaction through the entity name BAYS Enterprises, Ltd. (BAYS). The lease required an initial payment of $15,000; petitioner's portion of that payment totaled $1,250. Petitioner executed a promissory note in the amount of $1,250 for his participation under the lease agreement.

Also on December 23, 1983, petitioner entered into a Computer Program Employment Agreement (agreement) with ALA Enterprises, Inc. (ALA), providing for distribution of Monsoon. The terms are identical to those under the agreement covering Techno Sport Toboggan.

Before entering into the lease and distribution agreements, petitioner made no independent investigation of Century Concepts beyond reviewing the promotional materials provided by Century. Petitioner did not obtain a lawyer, an accountant, a C.P.A., or any other professional to review the documents before signing. Petitioner obtained no independent appraisals of the masters before signing the agreements and received the appraisals provided by Century only after entering into the lease and distribution agreements.

Century provided lessees two appraisals for each master video game. On February 23, 1984, VidElect, Inc., provided Century with an appraisal of Techno Sport Toboggan with a listed fair market value of $379,250. On June 1, 1984, WBW Appraisals provided Century with an appraisal of Techno Sport Toboggan with a listed fair market value of $2,333,760. On October 8, 1983, VidElect, Inc., provided Century with an appraisal of Monsoon with a listed fair market value of $379,250. NSO, Inc., provided Century with an undated appraisal of Monsoon listing as its fair market value $375,000. VidElect's appraisals are identical with the exception of the names of the masters.

Petitioner never received a copy of the Monsoon master. Petitioner did receive three copies of the Techno Sport Toboggan master; one was given to the IRS, and the other two are unopened in their original packaging. Petitioner had no experience in the computer video game market before his involvement with Century

Concepts and, in fact, describes himself as "not computer literate."

Petitioner made no attempt to market either of the video games other than through ALA. No video games were sold in 1983. On April 5, 1985, petitioner received the first and only payment from ALA in the amount of $3.59 representing income earned from the sale of copies of the video games.

On his 1983 Federal income tax return, petitioner computed an investment tax credit in connection with his involvement with Century Concepts in the amount of $14,375, of which $2,751 was claimed with respect to 1983. The unused portion was carried back to taxable years 1980 through 1982. Petitioner claimed deductions in the amount of $12,718 on Schedule C of his 1983 return with respect to Century Concepts. Petitioner received a refund in the amount of $18,105 with respect to taxable year 1983.

## OPINION

### Issue 1. Century Concepts

Section 162 allows a deduction for ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. In order to establish entitlement to deductions and credits, taxpayers have the burden of proving that they meet the statutory requisites. New Colonial Ice Co. v. Helvering, 292 U.S. 435 (1934).

Section 38 allows a credit for investment in certain depreciable property. The amount of the credit is limited to a percentage of a taxpayer's qualified investment in section 38 property. Sec. 46(a). Qualified investment in new property is a percentage of the property's basis, generally its cost. Secs. 46(c)(1), 1012. The lessor of the property, here Century Concepts, may elect to pass through the credit to the lessee, here petitioner, and the lessee generally is treated as having acquired the property for its fair market value. Sec. 48(d).

It is well settled that to constitute a trade or business, the activity must be engaged in with an "actual and honest objective of making a profit." Agro Science Co. v. Commissioner, 934 F.2d 573 (5th Cir. 1991), affg. T.C. Memo. 1989-687; Levy v. Commissioner, 91 T.C. 838, 871 (1988); Drobny v. Commissioner, 86 T.C. 1326, 1340 (1986). Absent an actual and honest profit objective, tax deductions relating to an investment are limited under section 183 to the income generated from the activity. Dreicer v. Commissioner, 78 T.C. 642, 644-646 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983).

Although a reasonable expectation of profit is not required, the taxpayer must have the objective of realizing a profit. Drobny v. Commissioner, supra at 1341; Engdahl v. Commissioner, 72 T.C. 659, 666 (1979). In this context, profit means economic profit, independent of tax savings. Drobny v. Commissioner, supra at 1341; Herrick v. Commissioner, 85 T.C. 237 (1985).

The existence of the required profit objective is determined by the objective of the entity which has control over the activity under scrutiny. Drobny v. Commissioner, supra at 1341. Thus, the existence of a profit objective of a partnership is determined at the partnership level, Agro Science Co. v. Commissioner, supra at 576; the existence of a profit objective of a joint venture is determined at the joint venture level, Brannen v. Commissioner, 78 T.C. 471, 501-505 (1982), affd. 722 F.2d 695 (11th Cir. 1984).

Resolution of whether a taxpayer engages in an activity with the requisite intention of making a profit is one of fact to be resolved on the basis of all the facts and circumstances. Agro Science Co. v. Commissioner, supra at 576; Hulter v. Commissioner, 91 T.C. 371, 393-394 (1988); Drobny v. Commissioner, supra at 1341. In making this determination, more weight must be given to the objective facts than to the taxpayer's mere after-the-fact statements of intent. Agro Science Co. v. Commissioner, supra at 576; Beck v. Commissioner, 85 T.C. 557, 570 (1985); sec. 1.183-2(a), Income Tax Regs.

Petitioner made no independent investigation of Century Concepts prior to his participation. He did not obtain the services of any professional to review the leasing documents before signing. Petitioner failed to obtain any independent appraisals of the masters and, in fact, never received a copy of one master and never opened the copy he did have of the other.

The appraisals provided by Century were wholly inadequate. The VidElect appraisals are identical word for word with the only exception being the names of the different games. One appraisal is not even dated. Petitioner testified that he has no experience in the computer game market and is in fact "not computer literate." Petitioner made no attempt to market the video games other than through ALA and, in fact, received no income from the sale of any games until April 1985, at which time he received a total of $3.59.

The promotional materials petitioner relied upon prior to participating in the lease program focus extensively on the tax benefits of entering into such a venture and contain no substantive analysis of the economic profitability of the program. The materials advertise a "write-off" ratio of at least 4.9:1 with a one-time lease payment and essentially no further action on the part of the investor.

Respondent submitted the report of Mr. Joshua W. Denham of Rancho Palos Verdes, California, as her expert witness in the instant case. We evaluate expert opinions in light of the demonstrated qualification of the expert and all other evidence of value. Estate of Christ v. Commissioner, 480 F.2d 171, 174 (9th Cir. 1973), affg. 54 T.C. 493 (1970); Parker v. Commissioner, 86 T.C. 547, 561 (1986). We find Mr. Denham's report and testimony to be credible. We find that, based upon

Mr. Denham's expert report and testimony, the master video games at issue had little or no value.

Mr. Denham stated in his report that the games were not of commercial quality. The play of the games is too slow, the sound effects and graphics are poor, and the challenge is minimal and simplistic. In short, the games were not manufactured with the intent of marketing them commercially. In fact, as Mr. Denham states, the game packages did not contain any trademarks or any other evidence indicating that the games were protected from being copied by other game producers. We find that the absence of a trademark implies that the producer or owner placed no value on the games; any serious producer would have his or her product protected. Century obtained the masters from General Masters Corp. Mr. Denham found that General Masters primarily developed video games for the purpose of selling them for use in tax shelters.

Based upon the facts and circumstances of the instant case, we conclude that petitioner has failed in his burden of proving that he participated in the Century Concepts leasing program with an actual and honest objective of making a profit. Instead, we find that petitioner engaged in the leasing program primarily, if not exclusively, to obtain tax deductions and credits, thereby reducing the tax he would otherwise owe on income from other sources. Accordingly, respondent is sustained on this issue.

Issue 2.  Negligence

Section 6653(a)(1) provides for an addition to tax equal to 5 percent of any underpayment if any part of the underpayment is due to negligence or intentional disregard of rules and regulations.  Section 6653(a)(2) provides for an addition to tax of 50 percent of the interest on that portion of the underpayment attributable to negligence.

Negligence is defined as a lack of due care or the failure to act as a reasonable person would act under similar circumstances.  Chamberlain v. Commissioner, 66 F.3d 729, 732 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1994-228; Heasley v. Commissioner, 902 F.2d 380, 383 (5th Cir. 1990), revg. T.C. Memo. 1988-408; Neely v. Commissioner, 85 T.C. 934, 947 (1985).  Petitioner bears the burden of proving that no part of the underpayment for the year at issue is due to negligence or intentional disregard of rules and regulations.  Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972).  The addition to tax for negligence under section 6653 is correctly assessed in cases where claimed deductions are not supported by the facts. Sandvall v. Commissioner, 898 F.2d 455 (5th Cir. 1990), affg. T.C. Memo. 1989-56 and T.C. Memo. 1989-189; Marcello v. Commissioner, 380 F.2d 499 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964).

Under some circumstances, a taxpayer may avoid liability for the additions to tax under section 6653(a)(1) if reasonable reliance on a competent professional adviser is shown.  United States v. Boyle, 469 U.S. 241 (1985); Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991).  In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure.  Freytag v. Commissioner, supra.  Reliance on representations by insiders, promoters, or offering materials ordinarily constitutes an inadequate defense to negligence. LaVerne v. Commissioner, 94 T.C. 637, 652-653 (1990), affd. without published opinion 956 F.2d 274 (9th Cir. 1992), affd. without published opinion sub nom. Cowles v. Commissioner, 949 F.2d 401 (10th Cir. 1991); Marine v. Commissioner, 92 T.C. 958, 992-993 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991).  Reliance on a professional adviser can be inadequate when the taxpayer and his adviser knew nothing about the nontax business aspects of the venture.  Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983).

The facts in the instant case speak for themselves. Petitioner failed to adequately investigate Century Concepts and failed to elicit the services of a professional adviser before participating in the leasing program.  We will not belabor the

issue or give undue dignity to petitioner's argument by reiterating what has been set forth above.  As we stated in <u>Harris v. Commissioner</u>, T.C. Memo. 1981-46, "To anyone * * * not incorrigibly addicted to the 'free lunch' philosophy of life, the entire scheme had to have been seen as a wholly transparent sham."

Based upon the record in the instant case, we find that petitioner's actions do not approach the actions that a reasonable and ordinarily prudent person would have taken under the circumstances.  See <u>Chamberlain v. Commissioner</u>, <u>supra</u> at 733.  Accordingly, petitioner is liable for the additions to taxdue to negligence under section 6653(a)(1) and (2) for the taxable years at issue.  Respondent is sustained on this issue.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>